BURDICK, Assignee, *v.* GILL and Wife.

*(Circuit Court, D. Iowa. April 29, 1881.)*

1. FRAUDULENT CONVEYANCE—PRESUMPTION OF FRAUD.

Fraud will be presumed where a voluntary conveyance to a wife is followed within a short time by the fraudulent disposition of the remaining estate of the grantor.

2. SAME—SUBSEQUENT CREDITORS.

Such conveyance will be void as to all subsequent as well as all prior creditors of the grantor.

3. SAME—PROOF OF INJURY.

It does not *seem* to be necessary to show injury to the creditors, in addition to a fraudulent intent, in order to avoid a conveyance upon the ground of fraud.

4. SAME—SAME.

If, however, a person, when about to contract debts, makes a voluntary conveyance, with the actual intent to deprive his future creditors of the means of enforcing collections of their debts, and this purpose is accomplished, such subsequent creditors are unquestionably thereby *injured.*—[ED.

In Bankruptcy. Appeal from district court.

*Clark & Heywood* and *Gillmore & Anderson,* for assignee.

*Herschl & Preston,* for Sarah Gill.

McCRARY, C. J. The complainant, as assignee in bankruptcy of Potter Gill, brings this bill in equity to set aside a conveyance of certain real estate made by the bankrupt to his wife, the respondent Sarah Gill, and to subject the same to the payment of the debts of the estate. The petition in bankruptcy was filed in the district court on the eighteenth of April, 1878. On the second day of January, preceding, he made the conveyance in question to his wife. It is conceded that the conveyance was voluntary. It is also conceded that there are no creditors now complaining whose debts were contracted prior to the conveyance, and the sole question in this case is whether said conveyance was fraudulent and void as to subsequent creditors.

1. Was the conveyance from the bankrupt to his wife made with intent to defraud subsequent creditors? This is the first inquiry. The following are the badges of fraud relied upon to establish the affirmation of this proposition: Very soon after the conveyance, Gill commenced disposing of his property with intent to defraud his creditors. He sold off his stock of furniture, and, according to his declarations, he sold it at less than cost. He destroyed or secreted his books of account. He bought largely, for time, but sold very rapidly, so that when the assignee took possession, on the twentieth of May, 1878, the goods on hand inventoried only $244, while the claims proved, and which must have been contracted within the preceding 90 days, amounted to $2,700. He is shown to have made several sales, the proceeds of which he fails to account for. About the sixteenth of April he sold a farm and received $675 cash on the purchase money. This proof is sufficient to show the fraudulent intent of Gill, and it is fair to infer, from all the facts and circumstances, that the conveyance to his wife was a part of his general plan and scheme of fraud. The time that elapsed between the date of the conveyance and the first of the admittedly-fraudulent acts, is so short as to afford a clear presumption that they all belong to and form part of a conspiracy. It will not be presumed that the gift to his wife

was honest and *bona fide*, when we find that it was followed within a month by the inauguration of a scheme to dispose of what remained for the purpose of defrauding creditors. The intent may be collected from the circumstances, and need not be shown by direct and positive proof. Bump on Fraudulent Conveyances, 309. And among the prominent badges of fraud are the "immediate engagement in hazardous business, and the contracting of debts immediately after the transfer." To which we may add, in this case, the fraudulent disposition of the remaining estate of the grantor very soon after the conveyance.

2. The well-settled rule is that where a conveyance is intentionally made to defraud creditors, it is void as to all subsequent as well as prior creditors; and it is certainly within the rule to say that if the conveyance is made with a view to defrauding subsequent creditors, it is as to them void, although all prior creditors are paid in full. Story's Eq. Jur. 362 *et seq.*; Bump on Fraudulent Conveyances, 311; *Sexton* v. *Wheaton*, 8 Wheat. 229; Kerr on Fraud and Mistake, 206, 207; 1 Am. Lead. Cases, Hare & Wallace's notes, (5th Ed.) 42, and cases cited in note 2. The general doctrine asserted by these authorities is not questioned, but it is insisted that the complainant must show not only the intent to defraud subsequent creditors, but that such creditors have actually been injured thereby. It is insisted that the intent to defraud is not enough, if no one is, in fact, injured. I do not find that this distinction is noticed in the books; but, even if sound, I do not think it can avail respondents in this case.

If a person, when about to contract debts, makes a voluntary conveyance, with the actual intent to deprive his future creditors of the means of enforcing collections of their debts, and this purpose is accomplished, I am very clearly of the opinion that such subsequent creditors are injured and defrauded. A creditor has a right, when extending credit, to rely upon the honesty and good faith of the debtor. He may assume, without inquiry, that the debtor has made no fraudulent conveyances of property. The debtor cannot be

heard to say, "My creditor might have learned that I intended to defraud him," if he 'had searched the records or made inquiry.

The creditor has a right to rely upon all the property of the debtor which in law or equity is liable for the debt, and this includes such as may have been conveyed with a view to deprive him of his remedy. The creditor is entitled to whatever remedy by judgment, execution, and the sale of property he would have enjoyed had the fraudulent conveyance never been made. As to him, it is void because intended to defraud him, and because, if not set aside, he would be deprived of a substantial right, to-wit, the right to levy upon and sell the property conveyed for the payment of his debt. The authorities cited by counsel for respondents, rightly understood, are not in conflict with this doctrine. If they were, I would not follow them.

The decree of the district court will be affirmed.