MUTUAL LIFE INS. CO. OF NEW YORK v. FARMERS' & MECHANICS' NAT. BANK OF CADIZ, OHIO, et al.

(Circuit Court, S. D. Ohio, E. D. September 16, 1909.)

No. 1,429.

1. EXECUTORS AND ADMINISTRATORS (§ 57*)—PERSONAL PROPERTY—RIGHT TO RECOVER INSURANCE PREMIUMS FRAUDULENTLY PAID—OHIO STATUTE.

Under Rev. St. Ohio 1908, § 3628, which provides that any person may insure his life for the sole benefit of his wife or children, and that the insurance shall be payable to them exempt from all claims by the representatives or creditors of the insured, "provided, that, subject to the statute of limitations, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy," the administrator of an insolvent intestate who so paid premiums in fraud of his creditors may maintain an action to recover the amount thereof, with interest, out of the proceeds of the policy, to be distributed as part of the estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 309; Dec. Dig. § 57.*]

2. EXECUTORS AND ADMINISTRATORS (§ 57*)—PERSONAL PROPERTY—SUIT TO RECOVER PROPERTY FRAUDULENTLY TRANSFERRED.

An administrator of an insolvent intestate, by virtue of the powers conferred on him by the general administration statutes of Ohio, and under the decisions of the Supreme Court of the state thereunder holding that an administrator primarily represents the creditors and secondarily the heirs, and that where the estate is insolvent and the interests of the heirs is merely technical his duties are analogous to those of an assignee for the benefit of creditors, may maintain a suit in equity to recover personal property transferred by the decedent in fraud of his creditors.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 309; Dec. Dig. § 57.*]

3. EXECUTORS AND ADMINISTRATORS (§ 38*) — "ASSETS" — PROPERTY CONSTITUTING ASSETS.

The term "assets" in modern usage, as applied to decedents' estates, means property, real or personal, tangible or intangible, legal or equitable, which can be made available for, or may be appropriated to, the payment of debts.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 38.*

For other definitions, see Words and Phrases, vol. 1, pp. 556–559.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4.** INTERPLEADER (§ 35*)—COSTS AND FEES.

A life insurance company which in good faith files a bill of interpleader against adverse claimants to the proceeds of a policy and pays the money into court is entitled to its costs and counsel fees from the fund.

[Ed. Note.—For other cases, see Interpleader, Cent. Dig. § 76; Dec. Dig. § 35.*]

**5.** WORDS AND PHRASES—"REPRESENTATIVES."

The word "representatives," as used in Bates' Ohio St. 1908, § 3628, subd. 2, exempting the amount of life insurance policy from "all claims by the representatives and creditors" of the insured, means personal representatives.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, pp. 6110-6115; vol. 8, p. 7785.]

On Final Hearing. Interpleader by the Mutual Life Insurance Company of New York against the Farmers' & Mechanics' National Bank of Cadiz, Ohio, the administrator of M. J. Brown, deceased, and others. Decree for administrator.

M. J. Brown was president, cashier, and a debtor of the Farmers' & Mechanics' National Bank of Cadiz, Ohio, from the date of its organization in 1877 to his death in 1908. He was reputed to be possessed of considerable wealth, but, excluding controverted claims to the amount of about $50,000, of which about $36,000 are claimed by the bank as unpaid interest, he became insolvent in 1895, and remained so. In 1883 he took out an insurance policy in the Mutual Life Insurance Company of New York, payable to his wife, who died in 1904, and in case of her death preceding his, then to such children of his body as should be living at her death. The premiums were all paid by him out of his own funds. Suits having been brought by the bank in the state court to obtain the respective interests of certain of Brown's children in the insurance, to which suits the insurance company was made a defendant, the company filed its bill, making the children, the bank, and the administrator of Brown's estate parties defendant, and, having deposited the money in court, asked the allowance of its attorney fees, that the claimants of the fund be required to interplead, and that it be relieved from further liability. The bank, as creditor of all, and as assignee of some, of the heirs, claims the fund. Brown's administrator also asserts a right to the fund by virtue of the powers vested in him as such under the Ohio administration act, and under the provisions of section 3628, Rev. St. Ohio 1908 (Act April 19, 1898; 93 Ohio Laws, p. 130.) He alleges that Brown was insolvent when he insured his life, and ever afterward remained so, and that all the premiums were paid by him in fraud of his creditors. If the bank's claim for the above mentioned $36,000 be maintained as provable and valid, Brown was insolvent when he took out the insurance, and remained so thereafter.

Hollingsworth & Worley, for administrator.
R. H. Minteer, for Farmers' & Mechanics' Nat. Bank.

SATER, District Judge (after stating the facts as above). At the threshold the administrator's right to maintain his action is challenged on two grounds: First, that section 3628, Rev. St. Ohio, 1908, does not contemplate or provide for a suit by a personal representative, but gives a right of action to creditors only; second, that an Ohio administrator of an insolvent estate cannot maintain an action, at law or in equity, to recover and subject to the payment of his decedent's debts personal property, or its avails, transferred by the intestate in fraud of his creditors. Section 3628 is as follows, the paragraphs, for convenience, being numbered:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"(1) Any person may effect an insurance on his life, for any definite period of time, or for the term of his natural life, to inure to the sole benefit of his widow and children, or of either, as he may cause to be appointed and provided in the policy;

"(2) And the sum or net amount of insurance becoming due and payable by the terms of insurance, shall be payable to his widow, or to his children, for their own use, as provided in the policy, exempt from all claims by the representatives and creditors of such persons;

"(3) Provided, that, subject to the statute of limitations, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy;

"(4) But the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless, before such payments notice shall be given the company by a creditor specifying the amount of his claim and the premiums which he alleges have been so fraudulently paid."

The foregoing section first found expression in the act of February 8, 1847 (45 Ohio Laws, p. 53; 1 Swan & C. Rev. St. p. 737, c. 59, § 1). The first two paragraphs of the original act were the same as those of the present law, but following them, and constituting the residue of the section, was the proviso:

"That the amount of premiums annually paid on such policy shall not exceed the sum of one hundred and fifty dollars ($150), and, in case of such excess, there shall be paid to the beneficiaries named in the policy such portion of the insurance as the sum of one hundred and fifty dollars ($150) will bear to the whole annual premium, and the residue to the representatives of the deceased."

That an administrator, under the original act, was authorized to recover the amount of insurance in excess of that which the insured was authorized to carry, clearly appears from Union Central Life Ins. Co. v. Eckert, 6 Am. Law Rec. 452; Wagner v. Karman, 7 Am. Law Rec. 670; Cross v. Armstrong, 44 Ohio St. 613, 10 N. E. 160; McCall v. Pixley, 48 Ohio St. 379, 27 N. E. 887; and Weber Loper & Co. v. Paxton, 48 Ohio St. 266, 26 N. E. 1051. The last-named case involved in their then existing form both sections 3628 and 3629, and recognized the right of both creditors and personal representatives to sue for a recovery. The omission in section 3628, as amended, of express authorization on the part of the deceased's personal representatives to maintain an action, is claimed to be an expression of legislative intent to vest in the creditors alone the right to the recovery of premiums paid in fraud of creditors. The notice provided for in the fourth paragraph of the section may be served by a creditor, whether the policy matures in the lifetime or at the death of the insured. Under the act in its original form a creditor might, and, in its amended form, he may, maintain an action for himself, or in behalf of himself and of other creditors, as the case may be. The sum recovered under the original act passed to the personal representatives, to be distributed in the orderly administration of the estate (McDonald v. Aten, 1 Ohio St. 293; Hoffman v. Kiefer, 19 Ohio Cir. Ct. R. 401), and such must be the rule under the existing law.

Both the original and the amended act were adopted for the protection of creditors. The right of the beneficiaries named in the original act to such insurance as an annual premium not in excess of $150 would purchase was absolute. So much of the proceeds of the policy,

however, as were purchased by the portion of the annual premium in excess of $150 inured to the benefit of creditors, if required for the payment of their claims. The amended act secures to creditors from the proceeds of the policy the premiums, with interest thereon, paid in fraud of them—the sums, with interest thereon, subtracted by the insured from his estate to maintain the insurance—and no more. The money paid for premiums constituted, at their respective dates of payment, a part of the insured's estate, which, if not diverted for the maintenance of insurance, would at his death pass to his creditors, preferred or common, or both, as circumstances might require, in the course of the administration of his estate. The purpose of the present act is to restore the estate to the position in which it would have been had there been no diversion of funds by the insured to the payment of premiums. It attempts no classification of creditors into common and preferred, nor does it change the order of distribution provided in section 6090, Rev. St. Ohio 1908. If the premiums recovered should not be distributed by the administrator under the provisions of the administration act, but by the court in which the recovery is had, the administration of the estate would be conducted partly in such court and partly in the probate court. The solidarity of administration designed by the administration act and recognized by the courts would be impaired, and this, too, notwithstanding the fact that the title and right of possession to the intestate's personal property, of which premiums fraudulently paid constitute in reality a part, as hereafter will more fully appear, vested in the administrator at the intestate's death. The amended section does not purport to place any limitation on the powers of an administrator as conferred by the administration act, nor was it designed to change the mode of settling decedents' estates.

The word "representatives" occurring in the second paragraph of the section means, as it did in the original act, "personal representatives." The use of the words "widow and children," which persons are entitled to the whole amount of the insurance, unless some or all of the premiums were paid in fraud of creditors, precludes the idea that legal representatives are meant in the exempting clause. The administrator may, therefore, in behalf of the creditors, lay claim to and sue for premiums paid in fraud of their rights. The situation would be anomalous which permits an administrator to lay claim to a fund and yet denies his right, by appropriate action, to recover it.

If the conclusion thus reached, that an administrator of an insolvent intestate may maintain an action of this character, be erroneous, then a determination of the second point urged by the bank may be decisive. Whether or not an administrator of an insolvent estate, appointed under the laws of Ohio, may maintain an action in equity to recover and subject to the payment of his intestate's debts personal property transferred, or, as in this case, money paid out by his intestate, in fraud of his creditors, had not, in 1877, been authoritatively settled. Lockwood v. Krum, 34 Ohio St. 1, 10. No reported case since that date has been found in which the point has been raised and decided. If the administrator succeeds not only to the rights of his decedent, but stands in the rights of creditors also, the action may be maintained. Doney v. Clark, 55 Ohio St. 294, 304, 45 N. E. 316;

Woerner, Adm. Est. § 296. At common law and under the English statutes, particularly 13 Eliz. c. 5, a transfer of property in fraud of creditors is void as to them, but is binding between the parties and on the heirs, legatees, and devisees of the transferror, and consequently the personal representative of a decedent cannot, where the common-law rule prevails or such statutes control, impeach the conveyance of his intestate on the ground of fraud. In many jurisdictions, however, by special statutory enactment or by judicial construction of statutes, the administrator or executor, as the representative of creditors, may prosecute proceedings to set aside a fraudulent conveyance made by his decedent, if the property so conveyed is required for the payment of his debts. 20 Cyc. 433; 14 Am. & Eng. Ency. Law, 333. In view of the Ohio statutes, does the common-law rule still prevail?

In Benjamin v. Le Baron, 15 Ohio, 517, decided in 1846, the question was left undetermined, but it was there held that an administrator of an insolvent estate cannot maintain an action of trover to recover goods transferred by his intestate to defraud his creditors, with an intimation that the remedy in such a case is in equity. The views of a majority of the court are thus expressed:

"We hold that the administrator can only maintain such action as the intestate might, if living. He represents the intestate; he steps into no other right. As between the fraudulent vendor and vendee, the transfer is good. Such conveyances are void only as to creditors. This is the well-settled doctrine in Ohio. Hence, as between the vendor and vendee in this case, the vendor had no rights, and of course his administrator could have none. But it is said that, unless we sustain a suit of this sort on the part of the administrator, creditors will have no remedy. This does not follow. When a bill shall be filed for that purpose, it will be time to consider of it."

The last-quoted sentence was held in Lockwood v. Krum, supra, to be an intimation that equity would afford relief where the property was required to pay debts of the estate; in Hoffman v. Kiefer, supra, that a creditor might maintain a bill in equity to recover fraudulently transferred personal property; and in Longley v. Sewall, 2 Ohio N. P. 376, that such a bill might be maintained by an administrator.

The conveyances alleged to be fraudulent in Benjamin v. Le Baron were made in September, 1837. An examination of the court records of Belmont county reveals that Le Baron died in December, 1839. Administration was granted on his estate March 1, 1843, and the declaration was filed by his administrator July 11th of the same year. The provisions of section 6090 were quite substantially embodied in the eighteenth section of the administration act of February 11, 1824 (22 Ohio Laws, p. 124). The act of March 12, 1831 (29 Ohio Laws, p. 229), repealed that of 1824, but incorporated its provisions, including those of section 18. The act of March 23, 1840 (38 Ohio Laws, p. 146), superseded all prior legislation on the subject of decedents' estates, and, with slight amendments, is still in force. Section 83 of that act differs but slightly from section 6090. The majority opinion contains no reference to any administration act, but states the common-law rule. The briefs filed in the case, excepting an allusion in that filed in behalf of the administrator to the provision authorizing an administrator to recover lands fraudulently conveyed, make no mention of any Ohio legislative enactment. In the dissenting opinion, however, the view is expressed

that the majority of the court misconceived the office and duties of an administrator under the laws of the state, and ignored the provisions of the administration act of March 23, 1840, and that under that statute the administrator represents the creditors of a deceased person making a fraudulent conveyance, and is bound to pursue the property for the benefit of creditors, which they might have reached had the intestate lived. It is unnecessary to speculate on whether or not the case was decided solely on common-law principles or with reference to any of the above-mentioned statutory enactments, or whether the act of 1840 applied to the estate of a decedent whose death occurred prior to the date of its passage, for subsequently the court ascribed to an administrator, as regards creditors, powers more enlarged than those possessed by him at common law, and such as were attributed to him, as above mentioned, in the minority opinion. In Sheldon v. Newton, 3 Ohio St. 494, 495, 504, so distinguished a jurist as Judge Ranney held that, under the act of 1824, the executor or administrator was a trustee for creditors and heirs. It would logically follow from this that, if an estate were insolvent, the interest of the heirs then being merely technical, the executor or administrator would be a trustee, for all practical purposes, for the creditors alone. In Kilbourne v. Fay, 29 Ohio St. 264, 23 Am. Rep. 741, the soundness of the conclusion reached by the majority of the court in Benjamin v. Le Baron was called in question. The paramount issue was whether or not, where a chattel mortgage is declared void by the statute as against the creditors of the mortgagor, and the mortgagee dies in possession of the mortgaged property, leaving an insolvent estate, such property becomes assets in the hands of the executor or administrator of the mortgagor; but the powers of an executor or administrator under the state statutes were also involved. Section 83 of the act of 1840, the provisions of which section were almost identical with those of section 6090, as regards the distribution of estates, was under consideration. It provided, among other things, that every executor or administrator shall proceed with diligence to pay the debts of the deceased, and shall apply assets arising from the personal estate and effects to the payment of (1) funeral expenses, those of the last sickness, and the expenses of administration; (2) the allowance to the widow and children for their support for twelve months; (3) debts entitled to preference under the laws of the United States; (4) public rates and taxes, and sums due the state for duties on sales at auction; and (5) debts due to other persons. In the course of his opinion Judge McIlvaine said:

"I shall not stop to cite cases wherein the trustee or administrator has been held to be a trustee for the benefit of the creditors of the estate. The provisions of the eighty-third section of the administration act, above quoted, clearly establish such relation. The ordinary course of administration is the means and process provided by law, whereby creditors of a deceased debtor receive payment. It is true that in the case of a solvent estate the heir has also a beneficiary interest in the trust as a distributee; but where the estate is insolvent, the interest of the heir is merely technical, as all of the assets in such case are administered for the exclusive benefit of creditors. The analogy between the duties of the office of an administrator of an insolvent estate and those of an assignee of an insolvent debtor are [is] so perfect that we might at once affirm that the doctrine of Hanes v. Tiffany, 25 Ohio St. 554, must control the decision of the present cases. * * *

"Our attention has also been called to Benjamin v. Le Baron's Adm'r, 15 Ohio, 517, wherein it was held 'that an administrator cannot maintain an action of trover to recover goods transferred by his intestate to defraud his creditors.' At common law, the injured creditor might sue such fraudulent, vendee as 'executor de son tort, and recover for his own benefit; but as no such relation as executor of his own wrong is recognized in our system of administration, I can see no good reason why the rightful representative of the estate should not be allowed to prosecute such wrongdoer for the benefit of creditors, to the end that a ratable disbursement should be made among them; yet it is not necessary now either to approve or disapprove of that decision."

The announcement there made has since been accepted as a correct definition of the status of an administrator. In Straman v. Rechtine, 58 Ohio St. 443, 457, 51 N. E. 44, in considering the lien which a decedent's creditors, in default of personal assets, had on lands of which he died seised, it was held:

"The exact nature of this lien has never been determined, but that to creditors it is a valuable right, cannot be doubted. It is of the same character and nature as the lien or trust in favor of creditors in cases of assignments for their benefit. In assignment cases the title to property passes to the assignee by the act of the owner, the assignor; and in the case of deceased persons the title to the personal property passes to the administrator by action of law upon the death of the owner, and the real estate vests in the heir, burdened with the debts of the ancestor, subject to be sold by the administrator for the payment of his debts; and the property is held by the assignee in the one case, and by the administrator in the other, in trust for the creditors, and the creditors in either case can only work out the payment of their claims through the said trustee. * * *

"In Kilbourne v. Fay, 29 Ohio St. 264, it is said on page 279 that the rights of creditors can be asserted through an assignee for their benefit, as they can be by judgment and execution against the property; and on the next page it is said that the analogy between the duties of an assignee and an administrator of an insolvent estate is perfect. That being so, it follows that the rights of creditors can be asserted through an administrator as fully and effectually, but not always as speedily, as by judgment and execution against the property."

The latest utterance of the Supreme Court on the question is found in Lingler v. Wesco, 79 Ohio St. 225, 86 N. E. 1004. The language employed in Kilbourne v. Fay is again quoted as a correct statement of the law, and the analogy between the duties of an administrator of an insolvent estate and those of an assignee of an insolvent debtor is said to be perfect.

The last four cases are not in harmony with the doctrine announced by the majority of the court in Benjamin v. Le Baron, but rest on a sound interpretation of the Ohio administration act, as will appear from repeated adjudications and the provisions of the act itself.

The title to an intestate's personal property vests in the administrator, that of the real estate in the heirs, burdened with the debts of the ancestor and subject to sale for their satisfaction. An intestate's personal property is primarily, and his real estate secondarily or contingently, liable for his indebtedness. The heirs take no part of the ancestor's estate until his debts are paid. The provisions of the act of 1840 relating to the settlement of insolvent estates (now sections 6224–6253, Rev. St.) deal wholly with creditors. In none of them is there any mention of the heirs, and for the manifest reason that heirs have no beneficiary interest in such an estate. The administrator primarily represents the creditors, secondarily the heirs, and especially is this

true in relation to the settlement of insolvent estates.  Giauque's Settlement of Decedents' Estates (4th Ed.) 276, 277;  Dawson v. Dawson, 25 Ohio St. 443, 450.  The assets of an estate are "the property in the hands of an heir, executor, administrator, or trustee, which is legally or equitably chargeable with the obligations which such heir, executor, administrator, or trustee, is, as such, required to discharge."  Favorite v. Booher's Adm'r, 17 Ohio St. 558.  Whatever may have been the definition affixed to the term "assets" in the earlier history of the law, it means, in modern usage, as applied to decedents' estates, property, real or personal, tangible or intangible, legal or equitable, which can be made available for, or may be appropriated to, the payment of debts. District Tp. of Williams v. District Tp. of Jackson, 36 Iowa, 216; Stanton v. Lewis, 26 Conn. 444, 447; 11 Am. & Eng. Ency. Law, 828, 829; 3 Cyc. 1111.  "In an accurate and legal sense," says Justice Story, "all the personal property of the deceased, which is of a salable nature, and may be converted into ready money, is deemed assets.  But the word is not confined to such property; for all other property of the deceased which is chargeable with his debts and legacies, and is applicable to that purpose, is, in a large sense, assets."  Story's Eq. Jur. § 531;  Marvin v. Marysville St. R. & T. Co. (C. C.) 49 Fed. 436, 437; Wilson v. Tootle (C. C.) 55 Fed. 211, 213.  A fraudulent grantee having in his possession property, conveyed to him by an insolvent grantor in fraud of his creditors, holds for them, by operation of law, as trustee, that which ought to be applied, and which, if the grantee be restored to his sense of moral duty, will be applied, to the satisfaction of their debts.  Swift v. Holdridge, 10 Ohio, 232, 36 Am. Dec. 85;  Hallowell v. Bayliss, 10 Ohio St. 536, 542, 543;  White v. Brocaw, 14 Ohio St. 341;  Starr v. Wright, 20 Ohio St. 107.  "A fraudulent conveyance," said Chief Justice Kent, "is no conveyance against the interests intended to be defrauded."  Sands v. Codwise, 4 Johns. (N. Y.) 536, 598, 4 Am. Dec. 305;  Burdick v. Gill (C. C.) 7 Fed. 668;  Swift v. Holdridge, supra;  14 Am. & Eng. Ency. Law, 311.  In the theory of the law, as against creditors, property fraudulently conveyed passes nothing and affects none of their rights.  It still remains the property of the debtor for the purpose of satisfying his creditors' claims, and they may, notwithstanding such conveyance, avail themselves of all remedies which the law has provided for collecting their debts out of the property or its proceeds.  Pratt v. Wheeler, 6 Gray (Mass.) 520; Webb v. Brown, 3 Ohio St. 247, 257;  Carr v. Hilton, 1 Curt. 230, Fed. Cas. No. 2,436.  As the title to a decedent's personal property passes to the administrator, and as his personal property conveyed in fraud of his creditors, if it is still in the possession of the fraudulent grantee, remains and is deemed as against creditors the property of the intestate, charged with his obligations, which the administrator is to satisfy, if practicable. the administrator, as trustee for their benefit, takes the title as of the date of the death of the intestate, clouded apparently by the fraudulent conveyance to the vendee.  It is property so far belonging to an insolvent decedent's estate when he died that it may rightfully be used by the administrator in discharging the obligation, which his office imposes on him, of paying the intestate's debts,

and it therefore is, in an important sense, as to creditors, an asset of the estate. Giauque on Settlement of Decedents' Est. (7th Ed.) 340. The general purpose of the administration act requires that a decedent's property shall be distributed among his creditors who prove their claims. It is therefore made the duty of an administrator to collect, as far as he is able, the assets of the estate. Section 6062. No function of his office calls for greater energy, promptness, and discretion than this. It is the primary essential of prudent administration, because it precedes in natural order the settlement of debts and charges. Schouler, Executors, § 269. Diligence is exacted of him in the payment of debts (sections 6062, 6074, 6090, Rev. St. Ohio), and also in the prosecution of actions to collect assets, under the penalty of his personal liability on his bond for any loss the estate may sustain by his neglect (Rockel's Comp. Ohio Prob. Pr. § 441). His pursuit and recovery of assets is limited only by the means at his command and sound discretion. Id. § 441; Schouler, Executors, §·273. If the estate be insolvent, as trustee for the benefit of creditors, he may remove the apparent cloud resting on the title to personal property conveyed in fraud of creditors, and subject it to the payment of the debts due them.

Schouler in his work on Executors, § 297, says:

"The representative's duty in pursuing assets extends to all assets of the decedent which are applicable to the payment of debts. Not only may he in some instances set up fraud to defeat the decedent's own act, but he may institute proceedings for setting aside a fraudulent transfer made by the decedent; and if he neglects doing so, to the injury of creditors and others concerned in such assets, he renders himself liable as for other malfeasance or nonfeasance in the performance of his trust, and under like limitations. The executor or administrator may consequently maintain an action at law or a suit in equity for the purpose of setting aside a transfer or conveyance of personal property made by his decedent for the purpose of defrauding his creditors, notwithstanding the decedent himself would have been barred. For a personal representative is not estopped by the acts and conduct of his testator or intestate under all circumstances; but is bound to settle the estate as justice and the interests of all concerned, in their turn, may demand. And in bringing such proceedings he should use due diligence."

Among the cases cited to support the text is Doney v. Clark, 55 Ohio St. 294, 45 N. E. 316. The primary question involved in that case was the administrator's right to recover from a fraudulent grantee the value of land conveyed to him by the intestate in fraud of creditors, and thereafter, prior to the death of the fraudulent grantor, sold by such grantee in violation of his fraudulent agreement with the grantor to an innocent third party for value. The opinion, however, states a rule applicable alike to fraudulently conveyed personal and real property, is in accord with Judge McIlvaine's pronouncement in Kilbourne v. Fay, and is as follows:

"It is true that, upon the subject of the rights of the administrator to maintain an action for the recovery of property fraudulently transferred by his decedent, the decisions in other states are not uniform. The decisions have been much influenced by statutory provisions. Where the administrator is regarded as succeeding only to the rights of his decedent, a recovery has, of course, been denied. Where he is regarded as standing in the rights of creditors also, it has been allowed."

The text-writer last mentioned is also authority for the statement (section 220) that:

"Any gift, assignment, conveyance or transfer of property within the statute 13 Eliz. c. 5, and analogous legislation, is void against creditors; and, consequently, it becomes the duty of a personal representative to procure the property by instituting on their behalf appropriate proceedings, considering the means of litigation at his disposal and the proof obtainable. * * * Generally speaking, property which has been assigned or conveyed by the deceased, after the manner of a gift, confers a title upon the donee or grantee, subject to the lawful demands of prior existing creditors of the estate. The executor or administrator, representing these and other interests, against the express or implied wishes of the deceased himself, if need be, may and ought to procure all assets suitable for discharging demands of this character. But if any balance is left over, it goes, not to the next of kin, but to the donee; for the revocation of any gift for the benefit of creditors of the decedent is only pro tanto."

In Williams on Executors (7th Am. Ed.) vol. 3, 130, it is said:

"He (the administrator) has a right of action for property in the hands of third persons which has been conveyed to them by the deceased in fraud of creditors."

Such a practice is highly salutary. The splitting up of the administration of estates between creditors and personal representatives, and the confusion resulting therefrom, a situation not contemplated by the general administration act, is thereby obviated. It quite as much advances the remedy of creditors, avoids a multiplicity of suits, and reduces costs, as does the administrator's right to recover fraudulently conveyed real estate. McCall v. Pixley, 48 Ohio St. 379, 27 N. E. 887. Should a creditor recover, as he may, property fraudulently conveyed by an insolvent intestate, the property so recovered, as we have already seen, must be placed in the hands of the personal representative to be administered under the orders of the probate court.

No valid argument can be based on the fact that the statute authorizes an administrator to recover real estate of an insolvent intestate conveyed in fraud of creditors, and contains no like express provision relating to personalty so conveyed. The administrator is clothed by operation of law with the title to personal property, but he has no interest in, or right to, or inherent power over the lands of the intestate. The title and the right of possession to them is in the heirs. If the lands have been fraudulently conveyed, the title is apparently in the fraudulent grantee. The administrator has no right of entry, and cannot bring an action to recover seisin or possession. He cannot count on the seisin of the intestate, because he derives no interest in them from the intestate by virtue of his administration. He cannot count on his own seisin, because his entry as to the tenant in possession would be tortious. Drinkwater v. Drinkwater, 4 Mass. 354; Schouler, Executors, § 509.

Nearly all of the Ohio administration act was copied from that of Massachusetts, which has been in force nearly 100 years, and is founded on a similar policy. The Massachusetts act had been construed as to the precise point here in issue by courts of that state prior to the passage of the act of 1840. It is reasonable to suppose that the

Legislature, in adopting the provisions of the Massachusetts act relating to the powers and duties of administrators, had in view the construction put upon it in that respect, and intended that it should receive the same construction here, especially as such construction is warranted by the language, as well as the policy, of the act so adopted. Favorite v. Boohers, 17 Ohio St. 548, 553, 554; McDonald v. Hovey, 110 U. S. 619, 628, 4 Sup. Ct. 142, 28 L. Ed. 269; 26 Am. & Eng. Ency. Law, 700, 701.

In Martin v. Root, 17 Tyng, 222, decided in 1821, Gibbens v. Peeler, 8 Pick. (Mass.) 254, decided in 1829, and Holland v. Cruft, 20 Pick. (Mass.) 321, decided in 1838, an administrator of an insolvent estate was held to be the representative of the creditors, and his right to maintain an action to recover, for the payment of debts, personal property which the intestate had transferred or conveyed in fraud of creditors, was sustained. In the first and last of these cases he was likened to an assignee of a bankrupt. In Holland v. Cruft a bill in equity was filed by an administratrix to recover personal property assigned by the intestate for the purpose of defrauding his creditors. The contention was made that the conveyance was valid as between the parties and binding on the administratrix, and could be avoided only by creditors. In the course of the opinion Shaw, C. J., said:

"In many respects the administrator is the trustee and representative of creditors, and as such may stand upon their rights, and assert claims, which the intestate himself could not have asserted. The whole course of proceeding in this commonwealth, especially in relation to the settlement of insolvent estates, proceeds on the assumption that the executor or administrator is in the first instance the trustee and representative of the creditors, and only secondarily the trustee of heirs. By various provisions of statutes, all the estate of a debtor is made liable for all debts, as well those by simple contract as those by special, and heirs have no claims except for the residue. * * * He (the administrator) holds the means in his hands to carry on such a suit for the common benefit. He is charged by the nature of his office to act in the first instance for the benefit of all creditors, and his fidelity is secured by bond and oath, by all the guards which the law can raise to secure it. The creditors are often very numerous, and many of them interested to a small amount. It might be extremely difficult to bring them to act in concert. Should all not unite, the great object of the law, an equal pro rata distribution, might be defeated or rendered difficult. Whereas the administrator is in the nature of a public officer, pointed out by the law to collect, apportion, and distribute the assets, and is placed in a situation to do it most conveniently and effectively for the interests of all concerned."

So much of the foregoing as relates to concerted action on the part of creditors and a possible unequal distribution can have no application to the Ohio practice, but the residue of the quoted passage is in harmony with the later utterances of the Ohio Supreme court and the general administration act.

In Chase v. Redding, 13 Gray (Mass.) 418, the right of an administrator to maintain a bill in equity to recover promissory notes secured by mortgage, which had been made donatio mortis causa, resulting in fraud upon the intestate's creditors, was sustained, on the ground that, in his capacity of trustee for the creditors, he might avail himself of legal means to get in the trust fund. Other cases in point are Wall v. Provident Institution for Savings, 6 Allen (Mass.) 320; Welsh v. Welsh, 105 Mass. 229; Parker v. Flagg, 127 Mass. 28.

The administration acts of Nebraska and Iowa are strikingly like that of Ohio. In Blackman v. Baxter, Reed & Co., 125 Iowa, 118, 100 N. W. 75, 70 L. R. A. 250, a case quite similar to Kilbourne v. Fay, and involving personal property, it is held that the heir's interest in such property is burdened with the claims of creditors, and until they have been discharged he is not entitled to distribution, or to exercise control over it, and that the administrator of an insolvent estate holds it for the discharge of the debts of the intestate, the heir's interest in it being purely technical. Not only is Kilbourne v. Fay quoted with approval, but the language of Cooley v. Brown, 30 Iowa, 470, in which it was held that an administrator may, for the benefit of the creditors of the estate, maintain an action to recover personal property, or its value, voluntarily or fraudulently conveyed by the decedent, is adopted as follows:

"Ordinarily it must be true that an administrator can maintain only such actions at law as the intestate might, if living. This must be invariably so in all actions for the enforcement of rights grounded upon the inheritance. So far as the administrator represents the heirs and the actions brought by him are to secure their rights and interests, he must be limited to such as the decedent himself might have maintained. But under the general statutes relating to the distribution of estates and the duties of administrators, the latter are charged with certain trusts in favor of the creditors of the estate. They are required to collect the assets, and to pay them over to the estate's creditors. Whatever ought to be applied to the payment of debts ought to be recoverable by the administrator representing the rights and interests of the creditors."

The powers of the administrator are likened, in the Blackman Case, to those of a receiver or an assignee in trust for the benefit of creditors.

In Becker v. Anderson, 11 Neb. 493, 498, 9 N. W. 640, 641, Judge Maxwell said:

"Where the estate is solvent, the heir has a beneficiary interest in the trust as distributee; but if the estate is insolvent, his interest is technical merely, and the executor becomes a trustee for the creditors of the estate, and in that capacity he is bound to protect their interests."

The view above expressed finds support in federal authority. In Hagan v. Walker, 14 How. 29, 14 L. Ed. 312, one of the reasons assigned for maintaining a bill in equity by creditors to recover fraudulently conveyed property is that the administrator for two years had failed to take action to reduce the assets to possession. In Central National Bank of Washington v. Hume, 3 Mackey (D. C.) 360, 51 Am. Rep. 780, an administrator and creditors contested for the premiums paid by an insolvent debtor on life insurance policies taken out for the benefit of his wife and children. The case was quite similar in that respect to the one at bar. The right of the administrator, as the representative of the creditors, to assail a fraudulent transfer, was one of the issues in the case. It was argued that an administrator is estopped from attacking the transactions of his intestate as fraudulent, but his right to do so was maintained by the court. The case was taken on review to the Supreme Court of the United States (128 U. S. 195, 9 Sup. Ct. 41, 32 L. Ed. 370), and was there decided under 13 Eliz. c. 5. The administrator's right to maintain such an action was again fully argued pro and con. The administrator was, on the facts and the state of the law, denied a recovery, but not on the ground that he was

173 F.—26

not a proper party and could not maintain the action. In Masonic Life Ass'n v. Paisley, 111 Fed. 32, the administrator was a contesting party representing the creditors in an action to recover insurance, the premiums to maintain which had been paid by an insolvent debtor.

Conflicting decisions have been rendered by the common pleas and circuit courts of Ohio as to the powers of an administrator. In Sayle v. Guarantee Savings & Loan Co., 2 Ohio Cir. Ct. R. (N. S.) 401, for instance, adherence is had to the rule announced in Benjamin v. Le Baron. In that case, however, the powers of a receiver, and not of an administrator were involved. Benjamin v. Le Baron is the only case cited. Other cases recognizing an administrator as a trustee for the benefit of creditors, and concurring with the views announced in Kilbourne v. Fay, are Jones v. Molster, 11 Ohio Cir. Ct. R. 432, 440; Kittredge v. Miller, 19 Ohio Law Bul. 119, 120 (decided by Judge Taft); Goepper v. Pfau, 6 Ohio Law Bul. 17; Linghler v. Kraft, 3 Ohio N. P. (N. S.) 653, 654, 655.

The administrator may maintain this suit under section 3628, and also by virtue of the powers conferred on him by the general administration act. The entire fund will be paid to him, awaiting the determination of the controversy as to the bank's claim against Brown's estate for interest. Union Central Life Ins. Co. v. Eckert, 6 Am. Law Rec. 452. The administrator is entitled to receive at once, to apply toward the satisfaction of decedent's debts, the premiums paid in 1895 and each of the succeeding years, with interest on each premium from the date of its payment. The bank, if it fails in the controversy relating to the $36,000 interest claim, will receive the residue of the proceeds of the policy. If it succeeds in establishing the validity of such claim, the administrator, in consequence of the finding that the intestate, in event such claim is valid, was insolvent at the time the policy issued, will take the whole of the proceeds of the policy, as they are less than the aggregate of the payments, with interest.

The costs, and also an attorney's fee of $150, for complainant's counsel, will be paid from the proceeds of the policy now on deposit in court. McNamara v. Prov. Sav. Life Assur. Soc., 114 Fed. 910, 52 C. C. A. 530.

The question as to the right of an administrator of an insolvent estate to maintain an action at law to recover personal property fraudulently conveyed by his intestate does not arise in this case, and is not considered.

An order may be taken in accordance with the foregoing.