## TAPP et al. v. STUART.

### No. 897.

District Court, N. D. Oklahoma.

April 25, 1934.

Goldesberry & Klein, of Tulsa, Okl., for complainant.

Robert Stuart and Ralph A. Barney, both of Pawhuska, Okl., for respondent.

FRANKLIN E. KENNAMER, District Judge.

Mary Belle Tapp, an Osage allottee, with a certificate of competency and of less than one-half Indian blood, died a resident of Osage county on June 20, 1927. She left a will, approved by the Secretary of Interior, pursuant to the provisions of an Act of Congress of April 18, 1912. This will was admitted to probate in the county court of Osage county, and the respondent, Charles F. Stuart, is the duly appointed and qualified administrator with the will annexed. Com-

plainants are heirs of the said Mary Belle Tapp, and devisees under the will; Milford E. Tapp being a son of decedent, and Charles H. Tapp her surviving husband. Mary Belle Tapp died seized of her individual "headright" as an enrolled member of the Osage Tribe, and an inherited interest in the Osage "headright" of Adeline Kennedy Lockwood. Since the death of Mary Belle Tapp, a stated amount of income accruing to said "headrights" and collected by the Department of Interior, through the Osage Indian Agency, has been disbursed to respondent as administrator aforesaid. Complainants bring this action against the respondent as such administrator to recover said funds, contending such funds are not subject to administration in the probate cause, and that the departmental disbursements to the respondent were made under a mistaken conception of the law.

The respondent has moved to dismiss, and this motion is now for decision.

I think the only question meriting consideration is: Are the funds above described subject to administration in the county court of Osage county as assets of the estate of Mary Belle Tapp? If this question is answered in the affirmative, the motion to dismiss should be sustained; otherwise it should be overruled. A determination of the question turns upon the construction of the various acts of Congress applicable to the Osage Tribe. Respondent relies upon section 3 of the Act of April 18, 1912 (37 Stat. 86), which in part is as follows: "That the property of deceased ° ° ° allottees of the Osage Tribe ° ° ° shall, in probate matters, be subject to the jurisdiction of the county courts of the State of Oklahoma. ° ° ° ."

And also upon the following provision of section 4 of the act of March 2, 1929 (45 Stat. 1480), which is: "Upon the death of any Osage Indian of less than one-half of Osage Indian blood or upon the death of an Osage Indian who has a certificate of competency, his moneys and funds and other property accrued and accruing to his credit shall be paid and delivered to the administrator or executor of his estate to be administered upon according to the laws of the State of Oklahoma."

Respondent further urges the construction placed upon the various pertinent acts of Congress by the Department of Interior in its past practice to pay over to the executors and administrators of deceased Osages, situated similarly to Mary Belle

Tapp, funds of the character disbursed to respondent.

I am unable to sanction the position of respondent. The Acts of Congress of June 28, 1906 (34 Stat. 539), April 18, 1912 (37 Stat. 86), March 3, 1921 (41 Stat. 1249), February 27, 1925 (43 Stat. 1008, 25 USCA § 331 note), and March 2, 1929 (45 Stat. 1478), clearly evidence a general congressional intent to preserve to the Osages all "headright" income, free and exempt from claims for debt, except that certain debts of restricted Indians might be paid under approval of the Department of Interior, and also provide that such funds should be disbursed directly to the members of the tribe, or their heirs. The provision of the Act of March 2, 1929 (45 Stat. 1479), with reference to such funds, reading as follows: " * * * And all royalties and bonuses arising therefrom shall belong to the Osage Tribe of Indians, and shall be disbursed to members of the Osage Tribe or their heirs or assigns as now provided by law, after reserving such amounts as are now or may hereafter be authorized by Congress for specific purposes" (section 1), is illustrative of the general design of these acts.

In the case of Taylor v. Tayrien (C. C. A.) 51 F.(2d) 884, it was held that the "headright" of an Osage Indian of less than one-half blood, with a certificate of competency, did not pass to his trustee in bankruptcy.

In a well-reasoned opinion by Justice McNeill, in the case of DeNoya v. Arrington, 163 Okl. 44, 20 P.(2d) 563, 567, the Supreme Court of Oklahoma reached the conclusion that the income accruing to the "headright" of a deceased Osage allottee, subsequent to the death of such allottee, is not an asset of the estate of such decedent which can be appropriated for the payment of the claims of creditors. Justice McNeill construed the above-quoted provision of section 4 of the Act of March 2, 1929, relied on here by respondent, as follows: "Defendants in error stress the contention by reason of the words, 'accrued and accruing,' under said section 4 of the Act of March 2, 1929, that this would be sufficient to justify the estate to be held open for the purpose of receiving the income from decedent's headright to pay the claims of the creditors of said deceased allottee. Under the provisions of said act of 1906, and the acts amendatory and supplemental thereof, it is observed that the minerals are reserved as a communal interest to the Osage Tribe. A review of the various enactments of Congress in dealing with the oil, gas, and minerals reveal that no provision has been made whereby authority was given to the Indian to dispose of such headright or mineral interest, except by will which in all cases must be approved by the Secretary of the Interior. The aforesaid section 4 of said Act of March 2, 1929, specifically designates 'his moneys and funds and other property accrued and accruing to his credit.' We are of the opinion that these words 'accrued and accruing' were fitly and advisedly used by Congress, and as applied to an Osage headright do not extend beyond the fiscal quarter as provided in said section 4."

This reasoning of Judge McNeill appears to be sound and in accord with the spirit of the applicable congressional acts.

In 23 C. J. pp. 1125, 1126, verbo "Executors and Administrators," it is said: "The word "assets" is used to designate such property belonging to the estate of a deceased person as may rightfully be charged with the obligations which his executor or administrator is bound to discharge."

In the case of Mutual Life Ins. Co. v. Farmers' & Mechanics' Nat. Bank (C. C.) 173 F. 390, 397, this rule is recognized by the following statement: "Whatever may have been the definition affixed to the term 'assets' in the earlier history of the law, it means, in modern usage, as applied to decedents' estates, property, real or personal, tangible or intangible, legal or equitable, which can be made available for, or may be appropriated to, the payment of debts."

The Oklahoma Supreme Court, in the case of Barnard v. Bilby, 68 Okl. 63, 171 P. 444, held that the homestead allotment of a minor Creek Freedman, who died April 22, 1908, is not subject to the payment of the debts of the decedent, and is therefore not assets of the decedent's estate, and at page 67 of 68 Okl., 171 P. 444, 447, this language was used in the opinion in said case:

"It is well settled that probate courts do not have jurisdiction to authorize an administrator to sell lands that are not assets of the decedent's estate for the payment of the decedent's debts, or for any other purpose. Was the land sold assets of the deceased's estate? In Mutual Life Insurance Company of New York v. Farmers' & Mechanics' Nat. Bank of Cadiz, Ohio (C. C.) 173 F. 390–397, it is held that the term 'assets,' as applied to decedents' estates, means property, real or personal, tangible or intangible, legal or equitable, which can be made avail-

able for or may be appropriated to the payment of debts. See, also, 3 Cyc. 1111.

"Since under the acts of Congress above cited, which control in these matters, the land was not subject to the payment of the debts of the deceased, it did not become assets of the estate in the hands of the administrator, and therefore the county court of Wagoner county did not obtain jurisdiction to hear and determine whether or not said land was subject to sale for the payment of the debts of the deceased, or the expenses of administration. Since under the federal law the land was not subject to sale for payment of the debts of the deceased, upon the death of the allottee the title to the allotment of this minor Creek freedman passed immediately to his heirs, and the administrator was not entitled to the possession thereof and was not authorized to administer thereon."

See Cowokochee v. Chapman et al., 90 Okl. 121, 215 P. 759.

Therefore I conclude, under the provisions of the applicable acts of Congress herein referred to, that the funds in controversy are not assets of the estate of Mary Belle Tapp, which are subject to the jurisdiction of the county court of Osage county, for the purpose of administration, and the motion to dismiss should be overruled.