## No. 10,046.

### AMELIA C. MCKENZIE, ET AL., VS. GABRIELLA BACON, ET ALS.

An authentic act of sale is full proof against all parties thereto. In the absence of a charge of fraud or error, it cannot be contradicted by parol proof tending to show that the sale was not real, that the ostensible purchaser was but a person interposed, and that he had incurred no obligation to pay the price.

Parol evidence cannot be received to create or destroy a title to immovable property, or to prove an agency to buy or sell such property.

Where immovable property of an interdict (a lunatic) has been sold under regular proceedings, preceded by a valid order of a competent court, and the *proces verbal* shows an observance of the required formalities, and a valid adjudication for an adequate consideration, parol evidence is inadmissible to prove that the proceedings and adjudication were not intended to convey the property to the adjudicatee, but that he was merely interposed to hold the naked title, in order that he might convey it to another.

A curator of an interdicted person cannot keep the funds of the interdict without accounting for the same to the probate court, under a claim that the interdict is indebted to him. He must account for the money received, and the indebtedness of the interdict, if it exist, must be settled and adjudicated under the supervision of the court. Nor can such curator transfer his claim to another person and authorize such person to collect the money of the interdict and retain it in satisfaction of the debt so transferred, without proper judicial sanction.

The failure of the adjudicatee, at a judicial sale, to pay the price, gives the vendor the right to demand the revocation of the sale, though the property may have passed from the possession of the adjudicatee.

Where a person dies leaving no descendants or ascendants, but a brother and children of a pre-deceased brother, the latter are called to the succession of their uncle by representation, the children representing their pre-deceased father : but though thus representing their father, they do not derive their right to inherit from him, but from the law. Such right is not impaired or affected by any act of their father. Therefore, they are not estopped from prosecuting a right of action derived from the succession of their uncle, on account of acts or omissions of their father, although these acts or omissions might have estopped him (the father) had he survived the intestate from maintaining the action. Reaffirming 4 N. S. 557; 23 Ann. 290; 33 Ann. 1001.

APPEAL from the First District Court for the Parish of Caddo. *Taylor*, J.

---

*Young & Thatcher*, for Plaintiffs and Appellants:

"The right to rescind a sale for non-payment of the price is absolute on plaintiffs tendering the notes and amounts received, and his rights may be transferred to the heirs." Castle vs. Floyd, 38 Ann. 583

Registry is not necessary to preserve this right Johnson vs. Bloodworth, 12 Ann. 701. The right to dissolve the sale for non-payment of the price is independent of the mortgage. 28 Ann 598.

An administrator cannot pay debts or legacies, even where there are sufficient funds, without being authorized by the judge to that effect. C. C. 1063.

The fathers of minors cannot, in purchasing, retain the price, because entitled to receive the legacy for them and to enjoy the usufruct thereof during marriage.

His debt to the estate is personal and his claim to the legacy *in autre droit*. Gorton vs. Gorton, 12 La. 466.

The relation between factor and principal is not that between debtor and creditor. It is a relation of trust and confidence and compensation does not take place. O. C. C. 2207 : Nolan vs. Shaw, 6 Ann. 46.

Accounts between principal and factor are necessarily provisional until settled, and even after settlement may be rectified by either party on account of error or omissions. Bloodworth vs. Jacobs, 2 Ann. 25.

Every curator of vacant successions, as of absent heirs, is prohibited from purchasing by himself. or by means of a third person, any property, movable or immovable, intrusted to his administration under pain of nullity. C. C. 1146; Michaud vs. Girod, 4 Howard, 503. A person interdicted is like the minor. C. C. 415.

Where the court has ordered the sale of property on terms of credit, and it was sold for cash, the sale will be void for want of an order of sale. 15 Ann. 254.

Minors and persons interdicted cannot be prescribed against except in cases provided by law. C. C. 3522.

Judgments of courts charged with the administration of minors or interdicted persons— Probate Courts—cannot be contested in any other courts in collateral proceedings. 2 Ann. 642; 6 Wallace, 703; 1 H. D. p. 763, No. 2.

They are certainly conclusive unless shown to be erroneous. 1 H. D. p. 588, No. 3.

"A trustee shall not be permitted to mix up his own affairs with those of the *cestui que trust.*" Wormley vs. Wormley, 8 Wheaton, 463: *ib.* 444.

A trustee is not an agent. Taylor vs. Davis, 110 U. S. 330, and authorities there cited.

Those dealing with notice of facts are necessarily affected with notice of the law operating on those facts. Wormley vs. Wormley, 8 Wheaton, 445: Boone vs. Child, 10 Pet. 210-11-12: Vattin vs. Hinde. 7 Pet. 271-2.

PRESCRIPTION.

Prescription of notes does not bar action to dissolve. 24 Ann. 537; 11 Ann. 655; 1 Ann. 442; 16 Ann. 129.

Nor even omission to register, but in this case there was registry. 32 Ann. 461.

Prescription of action to dissolve does not run against lunatics originally interdicted, when, as in this case, they had no guardian or curator, indeed, the exception is not qualified. C. C. 3522, 3554; 2 Ann. 316, 320; 13 Ann. 340; 6 Ann. 111; 1 Ann. 442; 16 Ann. 130; C. C. 415.

*Henry C. Miller* and *F. L. Richardson,* and *W. A. Gunter,* on same side.

*Wise & Herndon* and *Alexander & Blanchard,* for Defendants and Appellees :

1.  "Neither the heirs of a deceased person, nor the transferee, can sue for the resolution of a sale until previous tender has been made of the outstanding purchase notes, and such part of the purchase price as may have been paid by the purchaser." 38 Ann. 583, and authorities therein cited. "A tender is a condition precedent *sine qua non,* to authorize a suit to rescind a judicial sale." Farquhar vs. Iles. 39 Ann. not yet reported.

2.  "The real cause or consideration of a written contract involving the transfer of immovable property may be shown by parol evidence." 32 Ann. 432; 3 Ann. 230; 36 Ann. 565. "Parol evidence is admissible to prove what occurred at the time of a judicial sale, or subsequently, in relation to compliance with terms of the sale." 1 R. 413. "So, too, that the price of real estate sold at auction was paid to a mortgagee, and the mode of such payment." 11 R. 270.

3.  This is an action to rescind a sale for non-payment of the price. The proof shows that every dollar of the purchase price was paid, not directly by the nominal purchaser, Donaldson, but by White for him. It can make no difference, in fact or in law, to the

McKenzie et al. vs. Bacon et als.

interdict or his heirs, whether the payment of the price was made directly by Donaldson or mediately through White.

4. The heirs of Dr. M. L. Gilmer, guardian, are bound by his acts, whether of fraud, negligence or omission, and having by the averments of their petition accepted his succession, are estopped from contesting the title of defendants. 14 Ann. 642; 15 Ann. 140. Francis M. Gilmer, another plaintiff, the proof shows, and he himself admits, had full knowledge of and advised the making of the sale to White in the manner in which it was done, and also discounted one of the notes given by White as part of the purchase price. He is clearly estopped from taking advantage of any defects or irregularities in the matter.

5. This suit was not brought until thirteen years after the sale was made; after the property had passed into the hands of third parties, innocent purchasers, and after the death of almost all of the parties connected with the sale. It is a stale demand, one upon which the courts look with extreme disfavor, and in order to establish which it is not enough for the plaintiffs to render probable, but they must make certain   7 Ann. 555, 559; 14 Ann. 317; 35 Ann. 1005; 37 Ann. 95.

### PLEA OF WANT OF TENDER.

" Neither the heirs of a deceased person nor the transferee can sue for the resolution of a sale until previous tender has been made of the outstanding purchase notes, and such part of the purchase price as may have been paid by the purchaser." 38 Ann. 583, and authorities cited.

" A real tender is a condition precedent *sine qua non*, to authorize a suit to rescind a judicial sale. Article 417, C. ! ., touching tenders made at any stage, refers to such as are made by a defendant. When it is alleged, denied and not proved by plaintifl, the action must be dismissed." Farquhar vs. H. S. Iles, et al , 39 Ann. (decided at Opelousas, not yet reported).

The plea is good, but defendants, who now own the property, are anxious to have the cloud on their title removed, and hence do not urge its consideration upon the court.

The opinion of the Court was delivered by

TODD, J.   This is a suit by the heirs of Nicholas M. Gilmer to rescind the judicial sale of a plantation situated in the parish of Caddo, and known as the " Nick Gilmer Plantation, " for the non-payment of the price.

The suit is against the heirs of Prassley W. Donaldson, the adjudicatee as purchaser at said sale, and those holding under him by mesne conveyances.

The plantation named belonged to Nicholas M. Gilmer, a resident of Alabama, and at the time of the sale, and long prior thereto, an interdicted lunatic, under the guardianship of Merriweather L. Gilmer, a resident also of Alabama.

The order for the sale of the property was made by the parish judge of Caddo parish, on the 19th of April, 1871, by the recommendation of a family meeting previously convoked for the purpose of advising in regard to said sale ; and after the regular delays and advertisements, the sale was made at public auction on the 23d of May, 1871, and the

property was adjudicated to P. W. Donaldson for $32,000, $5000 cash, and the balance on a credit payable in equal installments of one and two years, and secured by special mortgage; and on the 14th of June following a formal conveyance was passed before a notary conforming to the terms of the adjudication. This conveyance was duly recorded, and the inscription of the mortgage and vendor's privilege remained until the 8th of February, 1878, when it was canceled, by what authority it does not appear.

Nott & Leonard, attorneys for the guardian, received from the auctioneer the cash paid at the sale, and the notes of Donaldson for the credit part of the price and sent the same to the curator as guardian of the interdicted Donaldson himself, and took his (Donaldson's) receipt for the same.

M. L. Gilmer, the guardian, died in 1873, and the interdict in 1883, and in 1884 this suit was filed.

In December, 1871, Donaldson sold the property to Reuben White for $32,000, $20,000 paid in cash and the balance on a credit of one and two years.

Donaldson never paid over to Gilmer, guardian of the interdict, the cash put in of the price of adjudication, and never paid or even delivered to him the notes he had executed for the credit portion of the price.

The notes were found after the death of Donaldson among his effects, with his name torn off and unindorsed by him.

The defense to the action presented in the answers is substantially as follows:

It is charged that the sale to Donaldson was not a real sale, that he was but a person interposed for the purpose of making, subsequently, to White, a conveyance of the property under a private agreement previously had with the guardian of the interdict. That White and another person were to buy the property jointly at the public sale, but that this other having failed to meet the engagement with White, it was agreed that Donaldson should have the property adjudicated to him at the judicial sale, and make the conveyance to White afterwards; and in the meanwhile Donaldson was to hold the naked title in his name until such time as White was ready or prepared to comply with the terms of the sale. It is urged that White was the real purchaser of the property, and that he paid to Donaldson, alleged to be the agent of the curator or guardian of the interdict, the entire price for the property, and that, the price being thus paid, an action of remission for its non-payment must fail.

There were filed also pleas of estoppel, want of tender and prescription.

The plaintiffs are appellants from a judgment rejecting their demand.

The first legal question we are confronted with is a question of the admissibility of evidence. On the trial below, the court admitted against the objection of the plaintiffs, parol testimony in support of the defenses set up in the answer, as above-detailed, to-wit:

That the judicial sale to Donaldson was not real; that Donaldson was a mere party interposed, and that White was the real purchaser; also, of the private agreement under which the arrangement touching the judicial sale to Donaldson and the conveyance from him to White was to be consummated or carried out.

The objections, substantially, to this evidence, as shown in the bill of exceptions, were:

That the testimony was an attempt—

1st. To destroy title to real estate under a judicial sale by parol.

2d. To establish title in some other person than shown by the adjudication and notarial act, by the same character of evidence.

3d. That it was an attempt to prove by parol an agency to buy and sell real estate.

4th. To prove by parol, agreements relating to real estate antecedent and subsequent to the execution of the authentic act of sale from the estate of the interdict to Donaldson.

5th. That it was. an attempt to prove by parol, matters and things beyond what was contained in the authentic act.

As stated, these objections were all overruled and the testimony admitted.

An examination of the record shows conclusively that all the proceedings relating to this sale were legal and regular—including the recommendation of the family meeting advising the sale, and fixing the terms thereof—the homologation of the proceedings and the order of sale, the adjudication, and everything else relating to the confection or completion of the sale. The record in these respects is perfect and complete.

There is no pretense or allegation of fraud or error connected with these proceedings, but the proposition in substance is, in the absence of all cause of nullity in the proceedings, to destroy this complete and perfect record and establish another sale by parol. That is, to show that there was no judicial sale; that Donaldson, the declared adjudicatee, did not in fact purchase, but that he was merely interposed for

some one else; that he did not pay the cash which the *proces verbal* declares he did pay, and never obligated himself to pay the credit portion of the price, but that the notes given by him were but a pretense and empty formality.

We cannot escape the conclusion that· the attempt to contradict these essential, vital and solemn declarations of the *proces verbal* of the adjudication and the stipulations of the notarial act confirming the same, was in direct contravention of the rule laid down in Article 2276 C. C., as follows:

"Neither shall parol evidence be admitted against or beyond what is contained in the act, or what may have been said before or at the time of making them, or since."

And also of the provisions of Article 2236 of the Code, which reads:

"The authentic act is full proof of the agreement contained in it against the contracting parties, and their heirs or assigns."

Further, it is expressly provided that a power of attorney conferring authority to contract with reference to real estate must be in writing. C. C. 2992; Moggatt vs. Greig, 2 L. 596; Baden vs. Baden, 4 L. 167.

This last reference applies to the proposition to prove by parol that Donaldson was authorized by the guardian of the interdict to make the arrangements and agreement respecting the disposition of the land, including the sale to White mentioned in the foregoing statement of facts.

The articles which control our conclusions on this point seem so clear as to require no reference to adjudications to strengthen them, if confirmation is sought; but out of a multitude of decisions we refer to a number which bear a strong analogy to the instant case: Baden vs. Baden, 4 L. 167; Liantano vs. Baptiste, 3 R. 432; Fuselier vs. Fuselier, 5 Ann. 132; Barbin vs. Gaspard, 15 Ann. 539; Smith vs. Lambert, Ib. 566; D'Aquin vs. Barbour, 4 Ann. 441; Kunmensengeiser vs. Juncker, 28 Ann. 678; Hackenberg vs. Gastzkamp, 30 Ann. 898.

It has been expressly held that "where real property is adjudicated at public sale to one, to whom the title is made, his agency in the purchase for the benefit of his co-heirs cannot be proved by parol." 5 Ann. 132; 12 Ann. 213; Ib. 878.

To make correctness of our views even plainer, if possible: Suppose, for instance, that after this judicial sale to Donaldson, the interdict had recovered his reason, and ignoring the sale made during his interdiction had sought to recover the property.

The proceeding relating to said sale being, as before stated, entirely

legal and regular, of course he would be bound by the sale and es-topped thereby from a recovery.

Suppose, on the other hand, that he should have brought suit against White for the price of the property, in the averments that he, Gilmers, was the real vendor of the property and that White was the purchaser from him and not from Donaldson—the latter being a mere person interposed, and that White and not Donaldson was his debtor—it is evident that, in the absence of fraud or error charged, and with no transfer to himself of the evidences of the debt, White, upon objecting to the competency of parol evidence to prove these averments, could have defeatsd his recovery.

Rejecting the parol evidence to contradict the record as to this sale to Donaldson, and guided alone by this record, the case stands thus:

We find a perfect sale of the property from the estate of the interdict to Donaldson by judicial process.

Further, that about six months after the purchase by Donaldson, a sale by him of the same property to White.

And, as a further fact having an important bearing on the controversy, that the mortgage retained to secure the price from Donaldson was duly recorded and was of record when White bought and when those holding under him acquired the property.

This is all that the record discloses—at least by written evidence.

Finally, it is also shown by competent evidence that Donaldson never paid to the interdict, or his guardian, the notes given by him for the price of the property.

White, however, paid Donaldson in full the price for which he purchased the property from him. but no part of the sums he thus received from White did Donaldson pay over, at least in money, to the interdict or his guardian.  It is, however, urged and attempted to be shown, that the price paid by White to Donaldson for the plantation was virtually paid to the interdict, or enured to his benefit in this way.

It was averred that the interdict was indebted to his guardian and was proved on the trial that the guardian transferred this claim against the interdict to Donaldson, and that he (Donaldson) applied the money received from White for the property to the extinguishment of this indebtedness of the interdict to Gilmer, guardian, or himself (Donaldson) as transferee.

We cannot concede that M. L. Gilmer, guardian, could himself receive the price of land coming to his ward and dispose of it by applying it to the extinguishment of his debt against his ward extra-judicially; but it seems to us that when the money was thus received, it

was a matter for settlement before the probate court of Alabama. The funds of the interdict, when they came into the hands of his guardian, were essentially trust funds, and were to be accounted for to the court, and settled and adjusted by proper proceedings before the court; and the guardian, if he could transfer his claim against the interdict to another person, and could authorize such person to receive or collect funds belonging to the interdict, could only do so under the restrictions and conditions to which he himself was legally subject.

Be this, however, as it may, the record does not satisfy us that the interdict was indebted to his guardian. It is true that from the proceedings before the probate court of Alabama, in the matter of this interdiction and guardianship, it does appear that a provisional account was filed and homologated, by which a balance appears against the interdict, in favor of the guardian, of $18,409 85. This was of date June 25, 1866.

It further appears, however, that after the death of Gilmer, guardian, proceedings for an accounting were taken against his legal representatives by the heirs of the interdict. An account was filed, and judgment rendered against the guardian's estate for $27,509. This judgment was rendered on the 30th of May, 1887, and is a final judgment, conclusive of all matters pertaining to the guardianship.

This judgment is bitterly assailed. It is charged with having been procured by consent or connivance. The record shows that it was regularly rendered and properly certified, and that it was not appealed from nor annulled. We do not feel authorized, therefore, to disregard it, but on the contrary are bound to give it effect.

This ground of resistance to the plaintiff's action must, therefore, fall; and it is the very foundation of the defense.

There was a plea of want of tender; but the counsel of defendants in their brief expressly decline to urge it.

There is likewise a plea of estoppel.

The defendants charge that M. L. Gilmer, guardian of the interdict, consented to the agreement or understanding by which Donaldson was interposed as the nominal purchaser at the judicial sale, and to the subsequent sale of the property by him to White; and that his children, who are among the plaintiffs in this suit, are bound by his acts and are estopped from objecting to or attacking the proceeding covered by this agreement.

It is unnecessary for us to determine whether in fact M. L. Gilmer, the guardian, consented to said agreement, or was guilty or not of any

unauthorized or illegal act of commission or omission respecting said proceeding.

It is shown that said Gilmer, guardian, died before the interdict, and his children inherited the property in controversy, or their rights thereto, not from him, but from the interdict directly. The interdict was living at the time of M. L. Gilmer's death, and therefore Gilmer was not his heir and could have had no interest in his estate. *Nemo est hæres viventis*

·It is true that his children inherited from the interdict by what the law terms representation, but none the less did they inherit directly from him and in their own right. They were bound by no acts of their father, whom they represented, nor by obligations of his (if any) resulting from said acts as guardian or otherwise.

In the language of the Code: "Representation is a fiction of the law, the effect of which is to put the representative in the place, degree and rights of the person represented." C. C. 894.

Mourlon, after quoting the corresponding article of the Code Napoleon, proceeds to comment as follows:

"Il n'est pas exact de dire que le représentant entre *dans les droits du representé.* On ne représente, en effet, que ceux qui sont morts *avant le de cujus;* or, aux termes de l'art. 725, les personnes qui avaient cessé d'exister au décès du *de cujus* n'ont aucun droit à sa succession; en cessant de vivre, elles ont cessé d'être capable. Le représenté n'a donc eu aucun droit, a la succession du *de cujus*."

And again:

"Au reste il n'est pas nécessaire d'être héritier d'une personne pour la représenter, il suffit d'être son descendant. Mon père meurt et je renonce à sa succession; je le représenterai néamoins dans la succession de mon aïeul paternel, lorsqu' elle sera ouverte. Cela se conçoit, le droit de représentation ne faisait point partie de la succession de mon père; ce n'est pas de lui que je le tiens, je le tiens de la loi. C'est un droit qui est né dans ma personne; des lors peu importe que je sois ou non l' *héritier* de mon père. Je suis toujours son descendant, et c'est en cette qualité que j'ai le droit de le représenter. De là la règle qu'on peut représenter celui à la succession dequel en a renoncé. Mourlon, Examen du Code, 2 vol, p. 41, et seq.

Toullier on the same subject says:

"Il faut donc poser en principe que les enfans qui succèdent avec des parens plus proches du défunt, comme aurait fait leur père, ue tiennent point ce droit de celuici, et ne représentent point sa personne. C'est un droit qui leur est propre et qu'ils ne tiennent que de la

loi." * * * Barthole avait dit: *"Quod filius succedat in locum patris seu matris, quantium ad successionem avi, non habet a patre, sed ex dispositione legis."* Toullier, vol. 2, p. 111.

These views are supported by many other eminent French jurists. Paillet, leg and juris, des Suc. 2, 600 Manuel de droit Français, art. 744, note Laurent, 2 vol. p. 138, No. 175 ; on art. 848 (Court elem dé dr. Civ.)

The same principle is substantially embodied in our own Code Thus art. 900 C. C. reads :

" One who has renounced the succession of another may still enjoy the right of representation with respect to that other."

And this principle has been substantially recognized by the decisions of this Court. Destréhan case 4, N. S. 557 ; Suc. of Misses Morgan, 23 Ann. 290 ; Calhoun vs. Cosgrove, 33 Ann. 1001.

There is, therefore, no force in the plea of estoppel as respect the descendants of M. L. Gilmer.

The principle that excludes them from the operation of such plea does not, however, exist in favor of Francis M. Gilmer, another of the plaintiffs. He was a brother of the interdict, inheriting immediately from him ; and there is no question of representation to him involved.

It is shown beyond a doubt that he was for many years the adviser of M. L. Gilmer, guardian. He also was fully cognizant of the entire proceeding relating to the judicial sale and subsequent disposition of the property. He agreed to the arrangement and consulted with Donaldson, who was his son-in-law, the agent of M. L. Gilmer, and the adjudicatee of the property, and with the attorneys employed to effect the sale. He was fully committed to the plan of operations adopted with respect to the alienation of the property. Moreover, after the sale was made by Donaldson to White, he ratified it so far as relates to himself, by discounting one of the notes executed by White for part of the price, and received the payment of it. How could he consistently receive part of the price of this sale to White, knowing as he did all the facts relating to it and that led to it, and afterwards seek to recover the land itself? It does not lie in his mouth now to say that this sale to White was illegal and void, and that the sale should be rescinded for non-payment of the price when he had received a part of the price himself.

He is estopped under the equitable principles of the law from doing so.

McKenzie et al. vs. Bacon et als.

The plea of prescription is not urged or discussed before this Court, and it might be considered as abandoned.

But however that may be, prescription was suspended as to the interdict during his life, and this action was instituted by his heirs in a year after his death, and the plea is therefore without force.

This completes the review of the facts relating to this case, and of the legal questions and issues pertaining to the controversy, and from the conclusions announced, it is manifest the Court *a qua* was in error in dismissing the action.

There were questions raised by the pleadings touching the rents and revenues of the property, and the value of the improvements and reimbursement therefor.

From the disposition of the case by the lower court, of course these questions were not considered. They will be left for future determination, and this will necessitate the remanding of the case.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be annulled, avoided and reversed, and proceeding to render such judgment as should have been rendered, it is further ordered, adjudged and decreed that the suit so far as relates to Francis M. Gilmer, one of the plaintiffs, be dismissed and his demand rejected; and it is further ordered, adjudged and decreed that there be judgment in favor of the other plaintiffs in the suit, and that the judicial sale of the property described in the pleadings and attacked in this suit be rescinded and annulled to the extent of four-fifths interest therein, and that the said undivided interests of said land be restored to the plaintiffs (excluding said Francis M. Gilmer), to be held and owned by them according to and in proportion to their respective heritable rights therein. It is further ordered, adjudged and decreed that the case be remanded to the lower court for the sole purpose of determining the respective demands of the parties touching the rents and revenues of the property and the reimbursement for improvements made thereon since the sale aforesaid now rescinded.

The costs of both courts to be paid by the defendants.

Poché, J., being absent when this cace was tried, takes no part in the decision.

Justice Watkins recuses himself, having been of counsel.

---

ON APPLICATION FOR A REHEARING.

BERMUDEZ, C. J.  The Court did not decree the return of the five thousand dollars paid at the judicial sale, for the reason that it consid-

168

ered that a decision on that subject had been waived and that one was desired on the merits of the case.

As complaint is now made on the subject and adverse parties have, in an answer to the petition for a rehearing, consented to relief being allowed, the matter can be easily settled, without granting a rehearing.

It is therefore ordered that the previous decree herein rendered be amended so as to allow defendants credit in the adjustment accounts for four-fifths, to-wit: Four thousand dollars ($4000) of the amount, with legal interest from the acquisition of the property from the present owners thereof, the said sum to be credited on the rents and revenues of the property for which defendants are liable under the decree, and that thus amended, said decree remains undisturbed.

Rehearing refused.