## BARNARD v. BILBY et al.

No. 7389—Opinion Filed Oct. 30, 1917.

Rehearing Denied March 19, 1918.

(171 Pac. 444.)

(Syllabus.)

**1. Descent and Distribution — Children of Deceased Brother of Decedent—Statute.**

Under section 6895, Wilson's Annotated Statutes of 1903, children of a deceased brother of the decedent take their interest in the estate of the decedent directly from such decedent, and not through their father, who died before the decedent, and their right to their inherited interest in the estate is not affected by the acts of their father in reference to the property descended.

**2. Executors and Administrators—"Assets."**

The term "assets," as applied to decedents' estates, means property, real or personal, tangible or intangible, legal or equitable, which can be made available for or may be appropriated to the payment of debts.

**3. Indians — Homestead Allotment — "Assets."**

The homestead allotment of a minor Creek freedman who died April 22, 1908, is not subject to the payment of the debts of the decedent, and is therefore not assets of the decedent's estate.

**4. Same—Administrator's Sale of Allotted Land—Title—Collateral Attack.**

A purchaser at an administrator's sale of the allotted land of a minor Creek freedman takes the title subject to all the restrictions, conditions, or limitations imposed thereon by the acts of Congress relating thereto, and such a sale is subject to a collateral attack.

Thacker, J., dissenting.

Error from District Court, Wagoner County; Fred P. Branson, Judge.

Suit in ejectment by John S. Bilby against James M. Barnard, and, pending such suit, action for injunction by Barnard against Bilby and others. Actions consolidated and tried together, and from the judgment, and from the overruling of his motion for a new trial, Barnard brings error. Reversed and remanded, with directions.

Robert F. Blair, for plaintiff in error.

Rittenhouse & Brown, for defendant in error Bilby.

Dan M. Meredith and F. Scruggs, for other defendants in error.

RAINEY, J. This case involves the title to the allotment of Tom Rentie, an enrolled Creek freedman, who died on the 22d day of April, 1908, intestate, unmarried, and without issue, leaving surviving him as his next of kin and heirs at law the followng: Sophia Thompson, mother, Louis E. Nero, and Robert Nero, half-brothers, Sam Rentie, brother, Alice Rentie, sister, Curtis Nero and Sadie Nero, nephew and niece, respectively, children of his predeceased brother, Will Nero, and Mattie Cooks, a niece.

Louis E. Nero was appointed administrator of the estate of the said Tom Rentie on the 9th day of June, 1908, and soon thereafter filed his petition in the county court of Wagoner county for the sale of the homestead allotment of the decedent for the purpose, as alleged in said petition, of paying the debts of the deceased, costs of administration, etc. The petition was granted, and said homestead allotment was purchased at the administrator's sale by one John S. Bilby.

Tom Rentie, who was a minor at the time of his death, when about 14 years of age, attempted to convey by two warranty deeds, one for 80 acres and one for 40 acres, his surplus allotment to his half-brother, Will Nero. Soon after the execution of these deeds Will Nero attempted to convey the 80-acre tract to James M. Barnard, and the 40-acre tract to H. V. Lowe, and H. V. Lowe, in turn, attempted to convey the 40-acre tract to James M. Barnard.

Subsequent to the execution of these deeds Louis Nero, as next friend of Tom Rentie, commenced an action in the District Court of the United States at Wagoner, Okla., against James M. Barnard, to cancel and set aside these conveyances, as clouds upon the title of the said Tom Rentie. With the advent of statehood this action was transferred to the district court of Wagoner county, as successor to the United States District Court, and while the cause was pending therein Tom Rentie died, and the cause was revived in the name of his heirs and Louis E. Nero, as administrator of his estate, and on April 27, 1909, judgment was rendered therein canceling the aforementioned deeds. No appeal was taken from this judgment.

Subsequent to the death of Tom Rentie, and prior to the administrator's sale of his homestead allotment to Bilby, Sophia Thompson and Alice Rentie sold to James M. Barnard the interest inherited by them in both the surplus and homestead allotments of the deceased.

Louis E. Nero, as administrator of the estate of the deceased, agreed to give Mr. F. Scruggs, an attorney at law of Wagoner, Okla., an undivided one-fourth interest in the deceased's allotment, as attorney's fees in cause No. 1373, said action being the one wherein judgment was procured canceling the deeds above mentioned. This agreement was in writing and approved by the county court of Wagoner county.

Will Nero died prior to the death of Tom Rentie, and left as his children and only heirs at law Curtis Nero and Sadie Nero. Barnard went into possession of the surplus allotment soon after Will Nero and H. V. Lowe attempted to convey the land to him, and he went into possession of the homestead allotment immediately after Sophia Thompson sold him her interest therein. After his purchase at the administrator's sale Bilby filed suit in ejectment in the district court of Wagoner county, said action being No. 380, against James M. Barnard, for the possession of Tom Rentie's homestead allotment. Barnard answered, alleging that Bilby's title was void, and while this action was still pending and undecided, Barnard instituted an action in the same court against Bilby and the heirs of Tom Rentie, deceased. In this action Barnard sought to enjoin the prosecution by Bilby of cause No. 380, and to set aside the judgment in cause No. 1373, alleging that the judgment in said cause was void, for the reason that the action had never been properly revived. The action instituted by Barnard in the district court was No. 639, and was consolidated with cause No. 380, and the two cases were, by agreement, tried together, before the court, a jury being waived.

The findings of the trial court in said consolidated cases are too long to be incorporated herein in full, but in substance they were as follows:

(1) That the devolution of the estate of Tom Rentie, deceased, is governed by the laws of descent and distribution of the state of Oklahoma.

(2) That the administrator's sale of the homestead allotment of the deceased operated to vest in John S. Bilby the fee-simple title thereto.

(3) That John S. Bilby is entitled to possession of said homestead allotment, together with damages in the sum of $720.

(4) That James M. Barnard is entitled to recover of and from John S. Bilby the sum of $1,000, the same being the value of the improvements placed on the homestead allotment of Tom Rentie by Barnard, in good faith and under color of title.

(5) That Mattie Cooks has an undivided one-seventh interest in the surplus allotment of Tom Rentie, deceased.

(6) That Louis E. Nero has an undivided three-sevenths interest in said allotment, having purchased the interests of Robert Nero and Sam Rentie.

(7) That James M. Barnard has an undivided two-sevenths interest in said surplus allotment.

(8) That Curtis Nero and Sadie Nero together have an undivided one-seventh interest in said surplus allotment.

(9) That F. Scruggs has an undivided one-fourth interest in said surplus allotment, and "that F. Scruggs recover of and from each of the said defendants and plaintiffs an undivided one-fourth interest in said surplus allotment, and that the shares of Louis E. Nero, James M. Barnard, Mattie Cooks, Sadie Nero, and Curtis Nero be calculated after said 30 acres of the said F. Scruggs is taken away from the said 120 acres."

Mr. Barnard excepted to the judgment, and filed a motion for a new trial, which was overruled, and as plaintiff in error brings the case here for review. Hereinafter he will be denominated as plaintiff, and all the other parties herein as defendants.

Plaintiff first contends that the judgment in the suit instituted by Tom Rentie against him in the United States court is void, for the reason that said cause was not properly revived in the name of the heirs and administrator of the estate of the deceased. The trial court found:

That the cause was properly revived, and "that the judgment rendered by the district court of Wagoner county in cause No. 1373 was rendered after a general appearance therein by Barnard, and after the same had been revived by the heirs at law and the administrator of the estate of Tom Rentie, deceased, and after full notice to the plaintiff, and to his attorney of record, that no appeal had been taken from the judgment in said cause, and that the judgment therein was conclusive as to all matters and subjects litigated therein."

This finding of the trial court is not clearly against the weight of the evidence, and we are not at liberty to disturb the same. Schock et al. v. Fish, 45 Okla. 12, 144 Pac. 584.

In the trial of the instant case it was contended by the plaintiff that Louis E. Nero and Will Nero entered into a conspiracy whereby they were to convey Tom Rentie's allotment to the plaintiff, knowing that said land could not be lawfully conveyed on account of the minority of Tom Rentie. Will Nero's grantor, and that the said Louis E. Nero and the heirs of Will Nero, deceased, are estopped to claim any title or interest in the land in controversy. The alleged conspiracy was one of the vigorously contested issues in the case, and evidence was offered in support of and against plaintiff's contention, but the trial court found against plaintiff. in the following language:

"That said Louis E. Nero was not present when any of the said deeds by Tom Rentie to Will Nero or from Will Nero to H. V. Lowe and James M. Barnard were executed, and had no knowledge or information of their execution. and did not enter into any conspiracy or confederation with the said Will Nero and Tom Rentie to take the said deeds from Tom Rentie to the said Will Nero for the purpose of cheating and defrauding James M. Barnard and H. V. Lowe, by and through the sale of the said land."

We have weighed the evidence in the record, and the weight thereof, in our opinion, is in accord with the findings of the court. Schock- et al. v. Fish, supra.

It is next urged that Curtis Nero and Sadie Nero, children of Will Nero. deceased, are estopped from asserting any title to the land in controversy by the alleged wrongful conduct of their father in imposing upon the plaintiff an invalid title to said land. It is plaintiff's theory that when Will Nero executed and delivered his deed, with covenants of general warranty to the plaintiff and to the plaintiff's grantor. Lowe, that the said Will Nero and all persons in privity with him, including Curtis Nero and Sadie Nero, as his heirs, are estopped forever from claiming any right. title, or interest in and to the land described in said deeds, and are estopped to claim the right to the possession

of said land. It is plaintiff's contention that upon the death of Tom Rentie the title went through Will Nero to his heirs, and that the interest inherited by said heirs through Will Nero was an after-acquired title in Will Nero, and vested in Barnard, as Will Nero's grantee. We cannot agree with this contention, for the reason that Will Nero died prior to the death of Tom Rentie, and upon the death of Tom Rentie he never acquired any title to Tom Rentie's allotment. The applicable part of our statutes on succession is section 6895, Wilson's Annotated Statutes of 1903, which was in force and effect at the time of the death of Tom Rentie. It reads:

"If there be no issue, nor husband, nor wife, nor father, nor mother, then in equal shares to the brothers and sisters of the decedent, and to the children of any deceased brother or sister, by right of representation."

Under this statute Curtis Nero and Sadie Nero did not take their share in the allotment of the deceased, Tom Rentie, from Will Nero, but took direct from their ancestor, Tom Rentie, by representation.

In the case of Case v. Wildridge, 4 Ind. 51, the Supreme Court of Indiana held that, where a grandfather dies leaving a granddaughter as his heir, the latter inherits from the grandfather, and not through the father, who died before the grandfather, and she is therefore not affected by the acts of her father in reference to the property descended. This is also the holding of the Supreme Court of Louisiana in the case of McKenzie v. Bacon, 40 La. Ann. 157, 4 South. 65, wherein the court said:

"Where a person dies leaving no descendants or ascendants, but a brother and children of a predeceased brother, the latter are called to the succession of their uncle by representation, the children representing their predeceased father," and "derive their right to inherit from * * * the law," which "right is not affected by any act of their father."

In the case of Powers v. Morrison, 88 Tex. 133, 30 S. W. 851, 28 L. R. A. 521, 53 Am. St. Rep. 738, the Supreme Court of Texas held that the grandchildren of an intestate took by substitution, not through, but paramount to, their deceased parent. In that case the Texas law upon which the decision was based designated the grandchildren as persons to take title, under the circumstances of the case, and it was held that said grandchildren derived their title, not from the parent, but immediately from the intestate. We think this is the intent of our statute, and since the title was never in Will Nero,

Sadie Nero and Curtis Nero did not inherit from him, but directly from Tom Rentie. See, also, Valentine v. Borden, 100 Mass. 273.

Under section 16 of the Supplemental Agreement of June 30, 1902 (32 Stat. L. 500, c. 1323), the deceased, Tom Rentie, would not be estopped from asserting title to the land by reason of the execution of the void deed during his minority, and since Sadie Nero and Curtis Nero took directly from him, it necessarily follows that no estoppel could be asserted against them.

We concur with the plaintiff in the view that the administrator's deed from Louis E. Nero to John S. Bilby is void, and that Mr. Bilby did not obtain any title by virtue of the administrator's sale of the 40-acre homestead in controversy. It will be remembered that the land attempted to be thus conveyed is the homestead allotment of the deceased, Tom Rentie, who was a duly enrolled Creek freedman and a minor at the time of his death on April 22, 1908. At that time section 16 of the Supplemental Creek Agreement was in full force and effect. It reads:

"Lands allotted to citizens shall not in any manner whatever or at any time be incumbered, taken, or sold to secure or satisfy any debt or obligation nor be alienated by the allottee or his heirs before the expiration of five years from the date of the approval of this supplemental agreement, except with the approval of the Secretary of the Interior. Each citizen shall select from his allotment forty acres of land, or a quarter of a quarter section, as a homestead, which shall be and remain nontaxable, inalienable, and free from any incumbrance whatever for twenty-one years from the date of the deed therefor, and a separate deed shall be issued to each allottee for his homestead, in which this condition shall appear.

"Selections of homesteads for minors, prisoners, convicts, incompetents and aged and infirm persons, who cannot select for themselves, may be made in the manner provided for the selection of their allotments, and if for any reason such selection be not made for any citizen it shall be the duty of said commission to make selection for him. The homestead of each citizen shall remain, after the death of the allottee, for the use and support of children born to him after May 25, 1901, but if he have no such issue then he may dispose of his homestead by will, free from the limitation herein imposed, and if this be not done the land embraced in his homestead shall descend to his heirs, free from such limitation, according to the laws of descent herein otherwise prescribed. Any agreement or conveyance of any kind or character violative of any of

the provisions of this paragraph shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity."

At the time of the sale the act of May 27, 1908 (35 Stat. L. 312, c. 199), was in full force and effect. Section 4 of this act reads as follows:

"That all land from which restrictions have been or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized Tribes: Provided, that allotted lands shall not be subjected or held liable, to any form of personal claim or demand, against the allottees arising or existing prior to the removal of restrictions, other than contracts heretofore expressly permitted by law."

Under these acts the homestead in question was not subject to the payment of the debts of the deceased. In re Davis' Estate, 32 Okla. 209, 122 Pac. 547; Redwine v. Ansley, 32 Okla. 317, 122 Pac. 679; In re French Estate, 45 Okla. 819, 147 Pac. 319; Roth v. Union Nat. Bank of Bartlesville, 58 Okla. 604, 160 Pac. 505.

Counsel for defendant Bilby agree that it was the intention of Congress to exempt the property sold by the administrator from any form of claim or demand against the allottee, but insist that there is nothing in the record in the county court disclosing that the land sold was the homestead allotment of the decedent, or that he was a minor Creek freedman, and that because of the condition of the record the validity of the sale cannot now be called in question in a collateral proceeding against the purchaser of the land.

We have examined the record in the case and find that in the proceedings for the appointment of the administrator of Tom Rentie's estate, and for the sale of his homestead allotment, it nowhere appears that the decedent was a minor Creek freedman at the time of his death, or that the land sold was any part of the land allotted to him as such, but we cannot agree with counsel that the sale was not subject to collateral attack. We do not think the cases of Hathaway v. Hoffman, 53 Okla. 72, 153 Pac. 184, Eaves v. Mullen, 25 Okla. 679, 107 Pac. 433, and Baker v. Cureton, 49 Okla. 15, 150 Pac. 1090, are in point. We agree with the holding in these cases that the county courts are courts of record in probate matters, and that the records in such courts import absolute verity, and cannot be collaterally impeached as to any matter within the jurisdiction of said courts. If the county court

of Wagoner county in this case had jurisdiction over the subject-matter and the power to hear and determine the question as to whether or not tht land sold was subject to sale for the payment of the debts of the deceased, the authorities cited by counsel for defendant would govern. But the county court of Wagoner county did not have jurisdiction of the subject-matter, nor the power to hear and determine whether or not the land sold was subject to sale by the administrator.

Section 8417, Rev. Laws of Oklahoma 1910, provides that the real property of one who dies without disposing of it by will passes to the heirs of the intestate, subject to the control of the county court and to the possession of any administrator appointed by that court for the purpose of administration.

It is well settled that probate courts do not have jurisdiction to authorize an administrator to sell lands that are not assets of the decedent's estate for the payment of the decedent's debts, or for any other purpose. Was the land sold assets of the deceased's estate? In Mutual Life Insurance Company of New York v. Farmers' & Mechanics' Nat. Bank of Cadiz, Ohio (C. C.) 173 Fed. 390-397, it is held that the term "assets," as applied to decedents' estates, means property, real or personal, tangible or intangible, legal or equitable, which can be made available for or may be appropriated to the payment of debts. See, also, 3 Cyc. 1111.

Since under the acts of Congress above cited, which control in these matters, the land was not subject to the payment of the debts of the deceased, it did not become assets of the estate in the hands of the administrator, and therefore the county court of Wagoner county did not obtain jurisdiction to hear and determine whether or not said land was subject to sale for the payment of the debts of the deceased, or the expenses of administration. Since under the federal law the land was not subject to sale for payment of the debts of the deceased, upon the death of the allottee the title to the allotment of this minor Creek freedman passed immediately to his heirs, and the administrator was not entitled to the possession thereof and was not authorized to administer thereon.

In this jurisdiction, as in practically all jurisdictions, the purchaser is bound to take notice that the administrator, as the representative of the deceased, is authorized to sell only such property as came into the administrator's hands as assets of the de-

cedent's estate. It is the duty of the purchaser at such a sale to examine the record and title to the land, in order to know what he is buying.

Counsel for Bilby have filed a very able brief, and have made an ingenious argument in support of their contention, but surely counsel would not contend that the probate courts of this state would have jurisdiction to authorize the guardian of a full-blood Indian minor to sell such minor's lands from which the restrictions had not been removed. If such a sale were made, and even though there was nothing on the face of the record to show that the land was the restricted allotment of a full-blood Indian minor, and therefore not subject to sale, we still think the sale would be void, and that said minor would no be estopped to attack the same collaterally. In such a case the probate court would not have the power to hear and determine the question as to whether or not such restricted land was subject to sale. That question has already been determined by Congress. It cannot be doubted that the applicable acts of Congress relating to the allotted lands of members of the Five Civilized Tribes are an integral part of the title to such lands, and since the purchaser at an administrator's sale does not acquire any greater estate or better title than the deceased had, such a purchaser, in the case of allotted Indian lands, takes the land purchased with all the restrictions, limitations, or conditions incident thereto as provided by the federal law, and the title of the real owner to such land is not impaired by reason of the fact that the probate proceedings on their face are regular and do not disclose the infirmities in the estate conveyed.

It has often been held that, where the title of a stranger is attempted to be conveyed by an administrator's sale, such stranger is not bound by the sale proceedings, although there are no irregularities on the face thereof, but may disregard said proceedings and sue in ejectment to recover his land or in equity to quiet his title if he is in possession. The proceedings are absolutely void as to him.

Therefore the trial court erred in not holding the administrator's deed to Bilby void.

Likewise Louis E. Nero, as administrator of the estate of Tom Rentie, deceased, was without authority to agree that Mr. Scruggs should have an undivided one-fourth interest in the surplus allotment for his services as attorney in cause No. 1373. It is not contended that any contract was made by Tom Rentie or any person acting for him during

his lifetime for said services. We are convinced that Mr. Scruggs has rendered valuable services to the heirs of this estate, and we regret that under the law he is not entitled to compensation in this action involving the title to the land, but do not hold that he would not be entitled to compensation in a proper proceeding.

For the errors committed by the trial court, this cause is reversed and remanded, with directions to enter judgment in accord with the views herein expressed.

All the Justices concur, except THACKER, J., who dissents.