### In re ESTATE of HIBDON.

No. 12662—Opinion Filed May 13, 1924

Rehearing Denied July 1, 1924.

(Syllabus.)

1. **Indians — Removal of Restrictions — Guardianship of Minors.**

Under the Act of May 27, 1908, 35 St. at L. 312, all restrictions on alienation or incumbrance of lands of allottees of the Five Civilized Tribes of less than half-blood, including minors, were removed.

While all restrictions as to alienation of lands of members of less than half-blood, including minors, were removed (see sec. 1, Id.), yet Congress recognized the disabilities of minors during minority, and by section 6 of said act placed the supervision and management of estates of minors under the probate jurisdiction of the county courts of the state, and by so doing placed such estates under the laws of the state relating to guardianship of the estate of minors.

2. **Descent and Distribution — Passage of Title to Heirs—Estates of Minors.**

Under section 11300, Comp. Stat. 1921, all property, both real and personal, of all persons who die intestate passes to the heirs of such intestate, subject to the control of the county court and subject to administration.

Under said section the title to the property of adults dying intestate automatically passes by operation of law to the heirs of such intestate, subject, however, to administration, but the title to property of minors does not pass automatically to his heirs, but must pass through the process of guardianship as provided by article 14, chap. 5, Comp. Stat. 1921, subject to the administration provided for in section 11300, supra.

3. **Executors and Administrators—"Assets" of Estate—Payment of Debts.**

The holding in Mutual Life Ins. Co. v. Farmers' & Mech. Nat. Bank, 173 Fed. 390-97, quoted by this court in Barnard v. Bilby, and again in Sandlin v. Barker, and followed in Kiel v. Baker, to wit: "That the term 'assets' as applied to decedents' estates means property, real and personal, tangible or intangible, legal or equitable, which can be made available for or may be appropriated to the payment of debts," clearly implies that there may be debts for the payment of which the lands of decedent constitute "assets" in the hands of the administrator.

4. **Same — Liability of Lands for Debts of Minor—Innocent Purchasers.**

Under the provisions of article 14, chap. 5, supra, it is the duty of guardians of minors and their estates to provide the necessities for the minor's education, for his keeping, his necessary medical treatment and care in sickness, together with his reasonably necessary burial expenses, and in the absence of other funds, his lands may be sold by the administrator for the payment of such claims.

The purchaser of a deceased minor's lands from the minor's heirs, before administration, is not an innocent purchaser in good faith, without knowledge of debts against such estate, but purchases same charged with knowledge that such estate is subject to administration, and to the costs thereof, and subject to the debts legally incurred through process of guardianship.

Error from District Court, Garvin County; G. M. Barrett, Judge.

In the matter of the estate of Hobert V. Hibdon, deceased. Petition of R. W. Humphrey, administrator, to sell property to pay claims denied, and he brings error. Reversed, with directions.

O. W. Patchell, for plaintiff in error.

Blanton, Osborn & Curtis, for defendants in error.

HARRISON, J. This is an appeal by R. W. Humphrey administrator of the estate of Hobert V. Hibdon, deceased. from a judgment of the district court of Garvin county dismissing his petition for an order of sale of the lands, left by said decedent, for the payment of debts established against such estate. The·case was tried in the district court on the following agreed statement of facts, to wit:

"1. That Hobert V. Hibdon was a duly enrolled member of the Choctaw Nation of Indians, of one sixty-fourth (1-64) blood, and received an allotment as such of the Choctaw and Chickasaw lands, and which lands lie partly in Garvin county and partly in McClain county, state of Oklahoma, consisting of an area of 230 acres, part of which is in cultivation.

"2. That said Hobert V. Hibdon died on the 27th day of February, 1916, at the age of about 12 years while a resident of said Garvin county, Okla., intestate and unmarried, and left as sole heirs of the said allotted lands, his father and mother, Henry C. Hibdon and Emma Livly Hibdon; that shortly after said death the said father and mother conveyed said lands to the movants herein, J. W. Porter and S. C. Newbern, and they immediately entered upon and took possession of said lands and have since held the same.

"3. That for five years prior to his death, the said Hobert V. Hibdon had been under the guardianship of one K. C. Parks, appointed by the county court of McClain county, Okla., and that during said guardianship indebtedness amounting to about $400 had been incurred, by the said guardian for the support, education, and maintenance, and for medical treatment under the orders of said county court of McClain county and which indebtedness remains unpaid and claims for all of which indebtedness have been presented to said R. W. Humphrey and allowed by him as such administrator and filed with and approved by the county court of Garvin county.

"4. That the claim of said creditor, O. W. Patchell, is for the amount allowed to one, Henry C. Hibdon, by the county court of McClain county on the — day of September, 1913, in guardianship of said K. C. Parks over said Hobert V. Hibdon for improvements made on the lands of said Hobert V. Hibdon in the year 1911, and which claim is for the sum of $91.20 and was assigned by the said Henry C. Hibdon to said O. W Patchell.

"That the claim of Sister Superior of St. Agnes Indian Academy of Antlers, Okla., is for school tuition and board of said Hobert V. Hibden while attending the said academy as a pupil during the session of 1915-

1916, prior to his death, and is for the sum of $50, and said Hobert V. Hibdon was placed in said academy by the said guardian, K. C. Parks, under the order of said county court of McClain county, Okla.

"That the claim of said creditor, Dr. J. D. McMillan, is for medical service and treatment rendered to said Hobert V. Hibdon in the month of February, 1916, and during his last illness and is for the sum of $50.

"That the claim of creditor, Saint Josephs Infirmary, is for the infirmary services, medicine, surgical dressing and special nurse, rendered and furnished to said Hobert V. Hibdon in the month of February, 1916, and during his last illness and is for the sum of $51.45.

"That the claim of Rogers-Wade Furniture Co. is for a burial casket, box, embalmment and care and transfer of the body of the said Hobert V. Hibdon after his death, and is for the sum of $90.

"5. That after said Humphrey qualified as such administrator the claims of said creditors hereinbefore named were duly presented to him, allowed and filed with said county court of Garvin county for its approval.

"6. That the lands so allotted to said decedent' comprise the entire assets of his estate."

On this statement of facts the district court reached the following conclusions of law and entered decree accordingly, to wit:

"Now, therefore, the court concludes as a matter of law upon said findings of fact that said lands so left by said Hobert V. Hibdon, deceased, are not liable for any of the debts allowed or known to exist against said estate, and that for such reason said. application for an order of sale should be denied.

"It is therefore considered, adjudged, and decreed by the court that the application of the administrator, R. W. Humphrey, for an order authorizing the sale of the lands described in said petition be and the same is hereby denied by this court."

This is the second time these same parties have been before this court. The same parties upon a matter relating to the same estate were before this court·in case No. 9515. In re Estate of Hibdon, opinion rendered February 3, 1920, rehearing denied March 9, 1920, 78 Okla.·28, 188 Pac. 97. The latter case was here on appeal from a judgment of the district court, which affirmed an order of the county court of Garvin county, revoking letters of administration and dismissing the administrator upon a motion filed by J. W. Porter and S. C. Newbern.

The circumstances which actuated the said J. W. Porter and S. C. Newbern to file said motion were that within a few days after

the death of said Hobert V. Hibdon, and before any administration had been had upon said estate, said J. W. Porter and S. C. Newbern procured a deed to the lands of said deceased minor from his mother and father, The minor in question died in February, 1916, and in October, 1916, one R. W. Humphrey was duly appointed and qualified as administrator of the estate of said deceased, and proceeded to give notice as required by statute to creditors of said estate, but about 20 days thereafter the grantees of the land of said deceased, to wit, J. W. Porter and S. C. Newbern, filed their motion in the county court praying that the letters of administration issued to R. W. Humphrey be revoked and the administration proceedings dismissed. The county court of Garvin county sustained their motion, whereupon the administrator, Humphrey, appealed to the district court, where in a trial de novo the district court affirmed the order of the county court revoking the letters of administration and dismissing the administration proceedings. The letters of administration had been issued upon the petition of creditors of the estate of the deceased, and this court in reversing the judgment of the district court said:

"A creditor of an estate has the right to have an administrator appointed for such estate and to present his claim against the estate for allowance, regardless of whether or not the property of deceased is liable for the payment of his claim; whether or not the land in question was subject to the claim against the estate and could be sold in payment therefor could only be heard and determined upon a petition to sell the lands for that purpose, and should the county court grant or refuse authority to sell the land for that purpose then from such judgment of the county court an appeal could be taken.

"The proceedings being regular in the county court, as found by the trial court, up to the time of filing the motion of the parties aforesaid to dismiss, whether such proceedings cast a cloud upon the title of the movants to the land is a question over which the county court had no jurisdiction, and the trial court erred in sustaining the motion. The judgment is reversed, and the cause remanded, with directions to overrule the motion discharging the administrator and dismissing the proceedings."

And in the first paragraph of the syllabus the court said:

"Under the Act of Congress approved April 28, 1904, and the decisions of this court subsequently rendered, it is held that the appointment of an administrator over the estate of a deceased minor Choctaw Indian of one-sixteenth blood, who died intestate, and the allowance of claims against the estate of the deceased by such administrator and the approval thereof by the county court having jurisdiction over said estate, are proceedings within the grant of power conferred by said act of Congress on said courts."

It is thus made clear that the creditors of an estate have a legal right to an administration of such estate and to have the validity of their claims determined, and if such claims be adjudged valid and be allowed, they then have the right to have determined whether the estate of such deceased may be sold to satisfy their claims. The creditors in the above statement of facts had claims against the estate of this deceased minor, claims which had been adjudged by the county court to be necessary for the education, care in sickness, and burial expenses of the said deceased minor, claims which had not only been adjudged necessary by the county court, but which had been incurred under due orders of the county court, and which claims had been filed with the administrator, Humphrey, and allowed by the county court, and said administrator has filed his petition in the county court for an order to sell the property of the deceased minor, or so much thereof as was necessary to satisfy said claim. The county court denied said petition, and upon appeal by the administrator to the district court, the district court denied such petition, and ordered it dismissed, and from such order this appeal is prosecuted.

As will be seen from the statement of facts above set out, the deceased minor was a one sixty-fourth (1-64) Choctaw Indian, duly enrolled, and his estate is controlled by section 1 and section 6, Act of May 27, 1908, 35 St. at L. 312, the applicable portions of which are as follows:

"Sec. 1. That from and after 60 days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood including minors shall be free from all restrictions. All lands, except homesteads, of said allottees enrolled as mixed-blood Indians having half or more than half and less than three-quarters Indian blood shall be free from all restrictions. * * *"

"Sec. 6. That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma. * * *"

And such estate, being under the probate courts of Oklahoma by virtue of the provisions of said section 6 quoted supra, is controlled by the provisions of section 1256, Comp. Stat. 1921; sec. 11300, Id.; sec. 1453, Id.; sec. 1455, Id; sec. 1456, Id.; and sec. 1466, Id., to which reference is made without setting same out in full at this time.

There is no dispute that if the probate court had jurisdiction to order a sale of the minor's land it would be controlled by the foregoing sections of statute; the dispute arises from different interpretations of the provisions of the above quoted provisions of sections 1 and 6 of the act of May 27, 1908, supra.

It is contended by defendant in error that the restrictions placed upon minors were not removed by the foregoing provisions of the act of May 27, 1908, and defendant in error relies wholly upon the opinion of this court in Sandlin v. Barker, 95 Okla. 113, 218 Pac. 519, and a subsequent opinion rendered in Kiel v. Baker, 91 Okla. 128, 216 Pac. 640, which followed the opinion in Sandlin v. Barker, supra, which held, in effect, that where debts were incurred during the minority of a freedman or member of the Five Civilized Tribes, his lands are not "assets" in the hands of an administrator of the estate of the minor, and that probate courts do not have jurisdiction to authorize an administrator to sell lands that are not assets of decedent's estate for the payment of decedent's debts, or for any other purpose, and that the facts in Sandlin v. Barker and facts in the case at bar are identical.

Plaintiff in error concedes that the facts in the two cases, Sandlin v. Barker and the case at bar, are entirely similar, but contends that the decision in Sandlin v. Barker, supra, is erroneous and should be overruled, for that it relies on Barnard v. Bilby, 68 Okla. 63, 171 Pac. 444; In re French's Estate, 45 Okla. 819, 147 Pac. 319; In re Davis' Estate, 32 Okla. 209, 122 Pac. 547; and Roth v. Union National Bank, 58 Okla. 604, 160 Pac. 505, which deal with debts incurred during minority before the passage of the Act of May 27, 1908, and that it is further erroneous and should be overruled for that in its interpretation of said Act of May 27, 1908, it further recites and relies upon First State Bank of Hewitt v. Lowery 72 Okla. 115, 178 Pac. 983; Egan v. Ingram, 58 Okla. 766, 161 Pac. 225; Mortgage & Debenture Co. v. Burrows, 75 Okla. 94, 182 Pac. 238; Tidal Oil Co. v. Flanagan, 87 Okla. 231, 209 Pac. 729; and Truskett v. Closser, 236 U. S. 223, 59 L. Ed. 549, all of which cases defendant in error contends are inapplicable

to the case at bar for the reason that they involve the question of the right of a minor of his own accord, during minority, to incur debts for the payment of which his lands may be sold after majority rights have been conferred by decree of the district court.

The facts in the case of Sandlin v. Barker, supra, so far as the debts are concerned, and how, and by whom they were incurred, are concerned, may possibly be identical with the facts in the case at bar, but we cannot determine from the opinion in Sandlin v. Barker just what character of debts were being dealt with, nor how they were incurred, nor the facts relating to same, for the reason that the facts as to the debts and manner of incurring them, or their purpose, are not only fully set out in Sandlin v. Barker, as they are in the case at bar, but the circumstances of the two cases and questions presented to this court by the two cases are clearly distinct. In Sandlin v. Barker, supra, the lands in question had already been sold for the payment of debts, the exact character of which we do not know, for the reasons above stated, but the lands had already been sold under order of the county court by the administrator and the action had been brought by the heirs of the deceased minor to cancel and set aside the administrator's deeds to same, and one material question, among others involved, was whether the statute of limitations barred the right of the heirs to maintain the action. In the case at bar the petition was for an order to sell lands, lands which had not been sold by the administrator, but lands which the administrator petitioned the county court for an order of sale for the satisfaction of debts incurred by order of the county court and pursuant to the supervision of the county court. This is not an action to set aside a deed to lands already sold by the administrator, but an action for an order to sell lands by the administrator in order to satisfy debts incurred pursuant to orders duly made by the county court and duly approved by the county court

Hence the conditions presented by the two cases are distinctly different and the decisions distinguishable inasmuch as the exact character of the debts incurred, who incurred them, and how they were incurred nowhere being fully set out in Sandlin v. Barker, and being fully set out in the case at bar, we are not controlled by the decision in Sandlin v. Barker, supra, in dealing with the debts involved in the case at bar, the character of which and the manner of incurring which, and the purpose for which they were incurred being clearly set out herein.

The portion of sec. 1, of the act of May 27, 1908, above quoted clearly removes restrictions as to alienation of lands of members of the Five Civilized Tribes of less than one-half blood, and while said act still imposes the disability upon minors to contract debts for which their lands may be held liable, yet the portion of sec. 6 of said act above quoted specifically places the disposition of minors' estates under the probate courts of the state, that is, the probate jurisdiction of the county courts of the state, and sec. 11300, Comp. Stat. 1921, specifically provides that:

"The property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate, subject to the control of the county court, and to the possession of any administrator appointed by that court for the purpose of administration."

In the case at bar, the lands of the deceased minor passed to his heirs, subject to administration in the county court. Had the deceased been an adult and died intestate, then his lands would by operation of law have automatically passed to his heirs, subject to administration, but being a minor, who was under disability to dispose of his estate by will, his lands did not automatically pass by operation of law, but being under guardianship, passed to his heirs under the laws governing the guardianship of minors' estates, but still subject to administration as provided in section 11300, supra, Hence J W. Porter and S. C. Newbern, having procured a deed from the mother and father of the deceased minor within a few days after his death, and before any administration, were not innocent purchasers in good faith, but were purchasers charged with knowledge of the provisions of sec. 11300, supra, that the estate of deceased passed to his heirs subject to administration; therefore the decisive question here is whether the debts incurred were authorized by law, and whether they were duly incurred through guardianship under authority of law, and therefore properly chargeable against the estate of deceased.

In addition to sec. 11300, Comp. Stat. 1921, sec. 156, Id., is as follows:

"All the property of a decedent, except as otherwise provided for the homestead and personal property set apart for the surviving wife or husband and minor child or children, shall be chargeable with the payment of the debts of the deceased, the expenses of the administration, and the allowance to the family. And the property, personal and real, may be sold as the court may direct, in the manner hereinafter prescribed. There shall be no priority as between personal and real property for the above purposes."

Sec. 1453, Id., is as follows:

"Every guardian appointed under the provisions of this article, whether for a minor or any other person, must pay all just debts due from the ward out of his personal estate and income of his real estate, if sufficient; if not, then out of his real estate, upon obtaining an order for the sale thereof, and disposing of the same in the manner provided by law for the sale of real estate of decedents."

Sec. 1455, Id., is as follows:

"Every guardian must manage the estate of his ward frugally and without waste and apply the income and profits thereof, as far as may be necessary, for the comfortable and suitable maintenance and support of the ward, and his family, if there be any; and if such income and profits be insufficient for that purpose, the guardian may sell the real estate, upon obtaining an order of the county court therefor, as provided, and must apply the proceeds of such sale, as far as may be necessary, for the maintenance and support of the ward and his family, if there be any."

Sec. 1456, Id., is as follows:

"When a guardian has advanced, for the necessary maintenance, support, and education of his ward, an amount not disproportionate to the value of his estate or his condition of life, and the same is made to appear to the satisfaction of the court, by proper vouchers and proofs, the guardian must be allowed credit therefor in his settlement. Whenever a guardian fails, neglects, or refuses to furnish suitable and necessary maintenance, support, or education for his ward, the court may order him to do so, and enforce such order by proper process. Whenever any third person, at his request, supplies a ward with such suitable and necessary maintenance, support, or education, and it is shown to have been done after refusal or neglect of the guardian to supply the same, the court may direct the guardian to pay therefor out of the estate, and enforce such payment by due process."

Sec. 1466, Id., is as follows:

"When the income of an estate under guardianship is not sufficient to maintain the ward and his family, or to maintain and educate the ward when a minor, his guardian may sell his real or personal estate for that purpose, upon obtaining an order therefor."

While this court in Sandlin v. Barker, supra, quoted from Barnard v. Bilby, 68 Okla. 63, 171 Pac. 444, the following:

"It is well settled that probate courts do not have jurisdiction to authorize an administrator to sell lands that are not assets

of the decedent's estate for the payment of the decedent's debts, or for any other purpose. Was the land sold assets of the deceased's estate? In Mutual Life Insurance Company of New York v. Farmers' and Mechanics' Nat. Bank of Cadiz, Ohio (C. C.) 173 Fed. 390-397, it is held that the term 'assets,' as applied to decedents' estates, means property, real or personal, tangible or intangible, legal or equitable, which can be made available for or may be appropriated to the payment of debts."

It is observed that the following language quoted above from 173 Fed. 390-97, to wit:

"It is held that the term 'assets' as applied to decedents' estates, means property, real or personal, tangible or intangible, legal or equitable, which can be made available for or may be appropriated to the payment of debts"

—clearly implies that there may be debts for the payment of which the lands of decedent constitute "assets" in the hands of the administrator. Therefore, in view of sec. 6, supra, of the Act of May 27, 1908, which specifically places the supervision of minors' estates under county courts of Oklahoma, in the exercise of their probate jurisdiction under the statutes, and in view of the foregoing statutes in relation to the guardianship of minors and the obligations thereby placed upon the guardian to provide for necessities of the minor, and the authority thereby conferred upon the county court to compel the guardian to provide the necessities of the minor; and in view of the fact that the necessity of the debts here involved is not disputed, and in our judgment could not be; and in view of the fact that they had been duly incurred by authority of the county court, and in view of the provisions of said statute that the estate of said deceased minor is subject to the payment of such debts, taking in consideration also the foregoing quotation from 175 Fed. 390-97, and also the fact that J. W. Porter and S. C. Newbern procured their deed as above stated, charged with knowledge that under the law the heirs of the deceased took his property subject to administration, we must conclude that they were not purchasers in good faith, and that deceased having no other property, except the lands in question, such lands were subject to the payment of the debts in question, and that both the county court and the district court erred in their conclusions of law and in their refusing to grant an order for the sale of the lands in question.

It is therefore the opinion of this court that the judgment of the district court should be reversed, with directions to grant to J. W. Porter and S. C. Newbern the opportunity, upon reasonable notice and within reasonable time, to pay into court sufficient money with which to pay the debts involved herein, with 6 per cent. interest thereon from the date of their allowance by the county court, together with the costs of administration, and that upon their failure to pay said money into court as herein ordered, the petition of the administrator be reinstated and the prayer thereof granted, and that the lands be sold to satisfy said debts.

Reversed with directions.

JOHNSON, C. J., and McNEILL, NICHOLSON, BRANSON, and GORDON, JJ., concur.